**H.B. FULLER COMPANY, a Minnesota Corporation, Plaintiff–Appellant,**

**v.**

**KINETIC SYSTEMS, INC., a Wisconsin Corporation, Defendant–Appellee.**

**No. 90–2293.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1991.

Decided May 17, 1991.

George A. Hesik, Willowbrook, Ill., for plaintiff-appellant.

Douglas J. Bornemann, Faegre & Benson, Minneapolis, Minn., Carl E. Gulbrandsen, Richard L. Bolton, Stroud, Stroud, Willink, Thompson & Howard, Madison, Wis., for defendant-appellee.

Before WOOD, Jr., CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

H.B. Fuller ("Fuller"), a manufacturer of building products, purchased a piece of materials handling equipment known as a bag palletizer from Kinetic Systems ("Kinetic"). The palletizer failed to perform to Fuller's satisfaction, and Fuller sued Kinetic, seeking rescission of the sale contract and damages for breach of express and implied warranties. Kinetic counterclaimed for the unpaid balance of the sale price. The district court, sitting without a jury, directed a verdict for Kinetic on Fuller's rescission count at the close of Fuller's case. After the conclusion of the trial, it found in favor of Kinetic on Fuller's warranty claims and its counterclaim. Fuller appeals these decisions. We affirm them.

## I. FACTS AND PRIOR PROCEEDINGS

Plaintiff H.B. Fuller manufactures building products at a plant in Palatine, Illinois. Among the products it makes is a powdered grout used to set ceramic tiles. The grout is shipped in multi-ply paper bags, which are loaded onto wooden pallets and moved onto trucks for distribution. Each pallet weighs 2,500 pounds and contains either 100 25–pound bags or 50 50–pound bags. Until 1988, Fuller workers loaded bags onto the pallets manually. Concerned with the number of back injuries the manual loading process was causing, Fuller employees Cornelius Dirkx and Donald Roese explored the possibility of purchasing a palletizer to automate the process of stacking the bags on pallets as they came off the production line.

A palletizer is a large piece of machinery that stacks cartons or bags on pallets in a predetermined pattern. There are two kinds: bag palletizers are used to stack bagged goods like animal feed, cement, or grout, and case palletizers are used to stack cartons. Because the products kept in bags are typically granular, the contents of the bags need to be kept evenly distributed if they are to be stacked in straight columns. To distribute the contents and to remove excess air from the bags, a bag palletizer is typically used with another piece of equipment called a bag flattener. The flattener compresses filled bags between rollers, distributing their contents evenly and squeezing out excess air. The bags then enter the palletizer, which stacks them on pallets according to a preset pattern.

One company that makes palletizers is Kinetic Systems of Menasha, Wisconsin. Kinetic employs a sales representative, Midcentral Packaging Machinery ("Midcentral"), to chase leads and obtain information which Kinetic uses to make sales proposals to prospective purchasers. In late February 1988, Midcentral employee Steve Moore learned of Fuller's interest in purchasing a palletizer and sent it advertising brochures describing Kinetic's palletizers. None of this information concerned bag palletizers specifically. For good reason: though Kinetic had sold over 90 case palletizers since it was founded in 1982, it had sold only one bag palletizer, to Ringger Feed, an animal feed manufacturer in Gridley, Illinois.

Fuller responded to the material it received from Moore by inviting him to visit the Palatine plant. On March 4, 1988, Moore met with Roese and Dirkx. He also looked around the plant and took measurements of the area where the palletizer would be placed. A few weeks later, Dirkx and Roese visited the Ringger Feed plant to see the Kinetic bag palletizer in action. The district court found that during the demonstration at the Ringger plant, Moore discussed with Dirkx and Roese the need to use a bag flattener with Kinetic's palletizer.

In late March 1988, Kinetic mailed Fuller a written offer to sell a bag palletizer for

$76,550. This proposal did not include a bag flattener or mention that one was needed. It did, however, contain warranty terms. The warranty Kinetic provided was limited to a statement that the palletizer would be "free from defects in material and workmanship" for a year from delivery. This warranty, the proposal stated in capital letters, was "EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND ANY OTHER OBLIGATIONS OR LIABILITY ON THE PART OF KINETIC SYSTEMS."

While Fuller was considering Kinetic's proposal, Kinetic's Chief Engineer, Clifton McMurry, visited the Palatine plant in late April 1988 to verify the measurements and other information previously obtained by Moore. After returning to Wisconsin, McMurry sent Fuller an amended proposal reflecting modifications made in light of what he had seen at the plant. This proposal contained substantially identical warranty terms, and again contained an exclusion printed entirely in capital letters. Fuller agreed to these changes, and executed the sales agreement contained in the amended proposal.

In June 1988, Fuller accepted Kinetic's proposal and paid a portion of the contract price. When the palletizer was completed, Fuller shipped a pallet of its grout by truck from Palatine to Kinetic's Wisconsin plant, a distance of over 200 miles. Over the course of this trip, the bags of grout apparently settled and became more compact than they were when they came off the line at Palatine. On October 3, 1988, with Dirkx and Roese watching, Kinetic employees tested the palletizer using the bags Fuller had shipped. No flattener was used with the palletizer during this demonstration, and no Kinetic employee mentioned the need for one. Though the machine did not perform flawlessly in this trial run, Dirkx nevertheless approved it for shipment to Fuller. The palletizer was delivered and on October 24, 1988 was installed. Fuller's total payments to this point amounted to the contract price less $11,115.

Fuller also paid independent contractors over $7,500 to install the palletizer.

The palletizer never performed up to expectations. It failed to form the desired stacking patterns, leading to unstable pallets. Some bags would rip during palletizing, spilling the corrosive grout on the palletizer. Others would fall off the pallets. Dirkx and McMurry were in daily contact concerning the problems, and McMurry visited the Palatine plant to examine the machine. Though at trial McMurry testified that the problem with the palletizer was the absence of a bag flattener to precondition the filled bags, at no point during his talks with Dirkx or his visit to examine the palletizer did McMurry tell Dirkx or Roese that they needed a flattener. Fuller gave up trying to fix the machine in December 1988 and disassembled it. It was briefly reassembled in April 1989 so that its operations could be videotaped, but was otherwise not used again.

In August 1989 Fuller brought suit against Kinetic in district court. In Count I of its complaint, Fuller sought rescission of the sales contract and the return of the contract price as well as the expenses it incurred in installing the defective palletizer. In Count II, Fuller alleged that the limited warranty Kinetic provided had failed of its essential purpose. In Count III Fuller alleged that Kinetic breached implied warranties of fitness for a particular purpose it created through Kinetic's awareness of the nature of Fuller's products and the demands that Fuller's product would impose on a palletizer used without a bag flattener. Kinetic counterclaimed for the unpaid balance of the purchase price, $11,115.

The case was tried to the district court sitting without a jury. At the close of plaintiff's case, the district court granted a directed verdict to Kinetic on Count I of Fuller's complaint on the ground that Fuller had failed to establish that the palletizer it received did not conform to the contract. Following defendant's case, the district court entered findings of fact and conclusions of law. The key findings of fact were that during the visit to Ringger Feed,

Moore of Midcentral had discussed the need for a bag flattener to be used with the palletizer Dirkx and Roese expressed interest in buying and that the palletizer's failure to perform up to expectations had been caused not by a defect in materials or workmanship but by Fuller's failure to use a bag flattener, which left the bags " 'fluffy' due to air entrapment and difficult to manage." Memorandum Opinion & Order, May 7, 1990, at 7, 1990 WL 70508. The district court's conclusions of law as to Count II were that Fuller had failed to establish by a preponderance of the evidence that the palletizer's problems were caused by defects in material or workmanship and that Fuller consequently had no claim under the limited warranty Kinetic provided in the sale contract. As to the implied warranty claim contained in Count III, the district court concluded that Kinetic had expressly excluded any implied warranty of merchantability and that this warranty exclusion was effective. Concerning Fuller's implied warranty claim, the district court determined that Kinetic had no special skill or judgment that enabled it to anticipate the problems Fuller would experience with the palletizer if it did not use a bag flattener. The district court found for Kinetic on its counterclaim.

■ Fuller appeals the district court's dismissal of Count I of its complaint at trial and its decision in favor of Kinetic on Counts II and III. Like the district court, our jurisdiction is founded on the diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1). Though the parties have at times relied on both Illinois and Wisconsin law, the sale agreement between Kinetic and Fuller specified that Wisconsin law would govern disputes arising under the agreement. In diversity cases district courts follow the choice of law rules that the courts of the state in which they sit would follow. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *United Thermal Indus. v. Asbestos Training & Em-*

*ployment,* 920 F.2d 1345, 1348 (7th Cir. 1990). In Illinois courts, "the law applicable to a contract is that which the parties intended.... When that intent is expressed, it should be followed." *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 529, 322 N.E.2d 454, 458 (1975). Illinois courts would respect the parties' choice of Wisconsin law, and so do we.[1]

## II. REVOCATION OF ACCEPTANCE

■ Count I of plaintiff's complaint was titled "Contract Rescission," and alleged a variety of facts concerning the palletizer's failure to perform and various representations made by Kinetic to the effect that it would. At trial, however, both parties seemed to recast Count I as turning on the question of whether the palletizer was a non-conforming good under the Wisconsin version of the Uniform Commercial Code, Wis.Stat.Ann. §§ 401.101 *et seq.* (1964 & Supp.1990), and, if the palletizer was non-conforming, whether Fuller revoked its acceptance of the palletizer "within a reasonable time after [it] discover[ed] ... the ground" supporting revocation as required under UCC § 2–608, which allows buyers to revoke their acceptance of non-conforming goods provided they do so in a timely fashion. Wis.Stat.Ann. § 402.608.

■ "When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed.R.Civ.Pro. 15(b). At trial, the district court specifically asked counsel for Kinetic whether the legal issue raised by Count I was revocation or rescission. He replied that under the UCC, "it is either rejection of acceptance or revocation or acceptance. There is no action for rescission." Transcript at 128. It is true that Official Comment 1 to UCC § 2–608 states that one purpose of the section is to supplant the common law action of rescission. But revocation of ac-

---

1. Since the substantive issues in this case are governed for the most part by the Uniform Commercial Code, we will rely on decisions interpreting the UCC in other jurisdictions to the extent that these interpretations are consistent with the interpretations of the UCC adopted by the courts of Wisconsin.

ceptance is not the equivalent of rescission of a contract, since even when acceptance is revoked, "the contract remains in force and the net effect is merely that the buyer has rejected the performance made by the seller." 4 R. Anderson, Uniform Commercial Code § 2-608:6 at 174 (1983). To rescind a sale contract, a buyer who "rightfully rejects or justifiably revokes acceptance" may cancel executory portions of the contract and recover the purchase price. Wis.Stat.Ann. § 402.711(1); UCC § 2-711(1). Moreover, while revocation followed by cancellation supplant a contract action for rescission, they do not supplant other common-law theories, notably misrepresentation, that might support an action for rescission. *See, e.g., McGinnis v. Wentworth Chevrolet*, 295 Or. 494, 668 P.2d 365, 367 n. 4 (1983).

Like many others before him, *see* 4 R. Anderson, Uniform Commercial Code § 2-608:6 at 173-74, Kinetic's counsel overlooked this legal nuance. In this case the confusion might be attributable to the facts alleged in support of Count I of Fuller's complaint, which point to both revocation of its acceptance of the palletizer as a substantially non-conforming good, *see* ¶ 10, and rescission on the basis of fraudulent reassurances that the problems the palletizer experienced when it was tested at Kinetic's plant would be remedied before delivery, *see* ¶ 8.[2] Fuller's counsel, too, framed the issue presented by the motion for directed verdict Kinetic submitted to the district court at the close of Fuller's case as whether Fuller had the right to revoke its acceptance of the palletizer. Transcript at 129. Given the explicit reference by counsel for both parties to the issue of revocation and the failure of Fuller's counsel to object when Kinetic framed the issue in terms of the application of UCC § 2-608, "we believe there was implied consent to litigation," *Gorby v. Schneider Tank Lines*, 741 F.2d 1015, 1022

(7th Cir.1984), on this issue within the meaning of Rule 15(b).

■ In its oral ruling on Kinetic's motion to dismiss Count I, the district court found that Fuller had not shown that UCC § 2-608 governed its dispute with Kinetic because the palletizer was a conforming product that Fuller had no right to reject. On appeal, Fuller argues that the district court failed to apply the proper standard when deciding a motion for a directed verdict. According to Fuller, the district court erred by deciding a factual dispute in Kinetic's favor on its motion rather than resolving all factual disputes in Fuller's favor for the purpose of deciding the motion.

"When reviewing directed verdicts in diversity cases, we use the state's standard of review." *Consolidated Bearings v. Ehret–Krohn Corp.*, 913 F.2d 1224, 1227 (7th Cir.1990). In Wisconsin, an appeals court reviewing a trial court's grant of a motion for directed verdict "must examine the evidence most favorable to the party against whom the motion is directed and if there is any evidence which will sustain his cause of action, the motion should be denied." *Peter M. Chalik & Assocs. v. Hermes*, 56 Wis.2d 151, 153-54, 201 N.W.2d 514, 516 (1972); *see also Warren v. American Family Mut. Ins. Co.*, 122 Wis.2d 381, 384, 361 N.W.2d 724, 726 (App.1984).

■ Fuller argues that the district court strayed from this standard by resolving the parties' dispute concerning when Fuller ceased using the palletizer in favor of Kinetic rather than denying the motion solely because this disputed factual issue existed. Certainly the parties differ as to when Fuller gave up on the palletizer and went back to stacking bags on pallets manually. Under Wisconsin law, however, not every factual dispute precludes a trial court from granting a motion for directed verdict. Rather, the dispute must be material to the

---

**2.** One argument supporting rescission that Fuller did *not* make, either in its complaint or at trial, was that Kinetic never told Fuller that it would be unable to use the palletizer unless it purchased a bag flattener as well. As we discuss below, the district court found that Fuller was made aware of the need for a flattener, though by Midcentral, not Kinetic. We note here only that Fuller has never argued that Kinetic's failure to inform Fuller that the problems it experienced with the palletizer after it was installed in Palatine were caused by the absence of a flattener amounted to the fraudulent omission of a material fact.

legal theory at issue in the case. *Holloway v. K–Mart Corp.*, 113 Wis.2d 143, 150, 334 N.W.2d 570, 573 (App.1983) ("case should be taken from the jury and a verdict directed only if the evidence gives rise to no dispute as to the material issues.").

 According to Fuller, the factual dispute regarding how long it continued to use the machine after it realized that it was not performing up to its expectations is material to the question of whether Fuller revoked its acceptance of the palletizer "within a reasonable time after [it] discover[ed] or should have discover[ed] the ground" supporting revocation. Wis.Stat. Ann. § 402.608(2); UCC § 2–608(2). However, we see no need to reach this question because we conclude that Fuller has failed to establish that it had any right to revoke its acceptance in the first place.

To justifiably revoke acceptance of goods under § 2–608 the buyer must show that the goods failed to conform to the contract and that the nonconformity substantially impaired their value. *Eaton Corp. v. Magnavox Co.*, 581 F.Supp. 1514, 1529 (E.D. Mich.1984); *Kesner v. Lancaster*, 378 S.E.2d 649, 652 (W.Va.1989); *Cato Equipment Co. v. Matthews*, 91 N.C.App. 546, 372 S.E.2d 872, 874 (1988); *Fernández v. Western Rail Road Builders*, 112 Idaho 907, 911, 736 P.2d 1361, 1364 (1987); *Herbert v. Harl*, 757 S.W.2d 585, 589 (Mo. 1988). Goods conform under the Uniform Commercial Code "when they are in accordance with the obligations under the contract." Wis.Stat.Ann. § 402.106; UCC § 2–106. The concept of "conformity" "does not subject the seller to performing the contract to the 'satisfaction' of the buyer," 1 R. Anderson, *supra*, § 2–106:17 at 606, but only to performing in accordance with the terms of the parties' agreement. In this case, that agreement imposed upon Kinetic the duty to provide Fuller with a palletizer that was free from defects. To establish a right to revoke acceptance of the palletizer, Fuller had, as an initial matter, to identify one or more defects.

Fuller never did so. Rather, the evidence it presented in its case in chief suggested that the problems that plagued its palletizer were caused by the absence of a bag flattener to precondition the bags of grout before they were palletized. Indeed, Cornelius Dirkx, Fuller's Manager of Engineering and Maintenance, testified both in his deposition and at trial that he attempted to rectify the problems Fuller was having by installing a homemade bag flattener.[3] Likewise, when Fuller called as a witness Clifton McMurry, formerly Kinetic's head of engineering, he testified on direct examination that a bag flattener would have offered "a good possibility for correcting the problem, or, at least, a step in the right direction." Transcript at 110.

Perhaps the most telling sign of Fuller's failure to establish a nonconformity came when the trial judge questioned counsel for both parties before deciding Kinetic's motion to dismiss Count I. The district court inquired of Fuller's counsel as to the evidence "with respect to any substantial defects in the machine itself?" Transcript at 130. In response, counsel could do no better than to state that the palletizer "didn't work." *Id.* The district court pressed on, asking "[w]hat is it about the machine itself that didn't conform to specifications, as opposed to the problem with the ... puffy product?" *Id.* at 131. Once again, Fuller's counsel could do no better than to state that Fuller "ordered a machine in good faith to do a job. It didn't work." *Id.* Because Fuller failed to introduce any evidence pointing to a nonconformity that would have allowed it justifiably to revoke its acceptance of the palletizer, the district

---

**3.** Transcript, page 78:

Kinetic Counsel: Is it true, Mr. Dirkx, that early on, with the Kinetic's [*sic*] palletizer, you attempted to install a homemade bag flattener?

Dirkx: I, at one point, attempted.

Kinetic Counsel: Isn't it true that you attempted to install this bag flattener, because you saw that it might be a problem, that is, that you could somehow get bags square or something?

Dirkx: We were trying everything we could.

Kinetic Counsel: I asked you if it wasn't true that you were trying to get the bags square.

Dirkx: I can't say that I was trying to get the bags square. I was trying something on top of the bag to ... flatten it a little bit or something.

court correctly directed a verdict in Kinetic's favor on Count I of Fuller's complaint.

### III. WARRANTY CLAIMS

#### A. *Failure of Essential Purpose*

■ Fuller next argues that the district court erred in ruling as a matter of law that Kinetic had successfully limited its warranties through the disclaimer contained in its sales agreement. According to Fuller, the limited warranty Kinetic provided "fail[ed]" of its essential purpose," *see* Wis.Stat.Ann. § 402.719; UCC § 2–719, allowing Fuller to avail itself of the various buyers' remedies provided for under the UCC.

Fuller relies on the Wisconsin Supreme Court's decision in *Murray v. Holiday Rambler*, 83 Wis.2d 406, 265 N.W.2d 513 (1978). In *Murray*, a couple purchased a motor home, signing a sales agreement that limited their remedy to the repair or replacement of defective components. The motor home was sold with numerous defects, all of which the dealer attempted to repair. The Wisconsin Supreme Court affirmed a jury verdict for the buyers on the ground that, notwithstanding the dealer's efforts, a warranty limitation could "fail[ ] of its essential purpose whenever, despite reasonable opportunity for repair, the goods are not restored to a nondefective condition within a reasonable time, whether or not the failure to do so is willful." 83 Wis.2d at 424, 265 N.W.2d at 522. Kinetic responds that Fuller's contention presumes that Fuller has established that there was a defect in the palletizer's material or workmanship, whereas the district court found as a fact that "Fuller's problems with Kinetic's machine were due to lack of adequate preparation of bagged grout," and that "the Kinetic palletizer was fully capable of performing the required functions, but [ ] Fuller's bags were not properly prepared ... by use of a bag flattener." Memorandum Opinion & Order, May 7, 1990, at 7, 1990 WL 70508.

We agree with Kinetic. The plain language of UCC § 2–719(2) speaks of circumstances that "cause an exclusive or limited remedy to fail of its essential purpose."

Wis.Stat.Ann. § 402.719(2). The word "remedy" in § 2–719(2) presupposes the existence of a breach of contract that calls the remedial terms of the warranty, limited though they may be, into play. *See* UCC § 2–719 Official Comment 1 ("If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy *for breach of the obligations or duties outlined in the contract.* ") (emphasis supplied). Thus in *Murray* the Wisconsin Supreme Court observed that "despite reasonable opportunity for repair, the defendants had failed to provide the Murrays with goods conforming to the contract—that is, with a safe and substantially non-defective motorhome—within a reasonable time after purchase." 83 Wis.2d at 425, 265 N.W.2d at 522–23. Here, however, the district court found that the cause of Fuller's palletizing problems was not a defect in material or workmanship but rather the absence of a bag flattener. We cannot say that this factual finding is clearly erroneous, so we must accept its correctness on appeal. Fed.R. Civ.Pro. 52(a); *Anderson v. City of Bessemer*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985); *Occidental Fire & Cas. Co. v. Continental Bank*, 918 F.2d 1312, 1317 (7th Cir.1990). Because Fuller has not identified a breach of the contract, it cannot establish that the remedies Kinetic provided for such a breach were so limited as "to deprive [Fuller] of the substantial value of the bargain." UCC § 2–719 Official Comment 1.

#### B. *Implied Warranty of Fitness for a Particular Purpose*

■ Fuller's last argument is that Kinetic had reason to know its "particular purpose" in purchasing the palletizer and that Fuller was relying on its skill and judgment "to select or furnish suitable goods," creating an implied warranty that the palletizer was fit for Fuller's particular purpose. Wis.Stat.Ann. § 402.315; UCC § 2–315. Essentially, Fuller argues that Kinetic knew that any bag palletizer Fuller purchased to handle its bagged grout

would have to be used with a bag flattener, and knew that Fuller was relying on it to provide this information.

Kinetic counters with two alternative responses. The first is that it disclaimed any implied warranties in its sales agreement with Fuller. The second is that the district court found as a fact that Dirkx and Roese had been warned of the need to use a bag flattener during their visit to the Ringger Feed plant to see a Kinetic bag palletizer in action, and that this warning deprives Fuller of the argument that Kinetic had superior skill and knowledge.

Under the UCC, any seller who "at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods" impliedly warrants that the goods it sells are fit for the buyers' purpose. Wis.Stat.Ann. § 402.315; UCC § 2–315. However, the Code permits sellers who seek to escape from the onerous requirements a warranty of fitness for a particular purpose could impose to "exclude or modify any implied warranty of fitness" so long as the disclaimer is "by a writing and conspicuous." Wis.Stat.Ann. § 402.316(2); UCC § 2–316(2).

Kinetic's disclaimer appears to satisfy this standard. The disclaimer appeared in two different documents Kinetic submitted to Fuller. First, it accompanied Kinetic's March 31, 1988 proposal. In this proposal, the warranty was included as part of two columns of small type that enumerated all of Kinetic's standard contract terms and was printed on the back of Kinetic's order form. The disclaimer was the only text printed in capital letters. Second, the warranty terms were included in the revised Kinetic proposal submitted a month later after McMurry had visited Fuller's plant. In this document the warranty terms were set out alone on a page titled "WARRANTY." Again, the warranty disclaimer was the only text printed entirely in uppercase letters.

A similarly conspicuous warranty, which appeared on a separate page of a sales proposal and contained a disclaimer in capital letters, was recently held to be effective by a Wisconsin appellate court. *See Consolidated Papers v. Dorr–Oliver Corp.*, 153 Wis.2d 589, 598–99, 451 N.W.2d 456, 461 (App.1989), *rev. denied*, 457 N.W.2d 323 (1990). Other state and federal courts applying UCC § 2–316(2)'s requirement that disclaimers be conspicuous have reached similar results. *See, e.g., Arkwright–Boston Mfrs. Mut. Ins. v. Westinghouse Elec.*, 844 F.2d 1174, 1181 & n. 15 (5th Cir.1988) (under Texas law, capitalized warranty disclaimer contained in contract was effective); *Xerographic Supplies Corp. v. Hertz Commercial Leasing*, 386 So.2d 299, 300 (Fla.App.1980) (under Florida law, capitalized warranty disclaimer contained in contract was effective). Certainly, Kinetic could have done more to bring its restrictive warranty terms to the attention of prospective buyers. However, in a contract of sale where the buyer was a sophisticated commercial party, *cf. Sierra Diesel Injection Serv. v. Burroughs Corp.*, 890 F.2d 108, 113–15 (9th Cir.1989), we think Kinetic's disclaimer was conspicuous enough so that reasonable people in the shoes of Fuller's representatives would have read it. *See* Wis.Stat.Ann. § 401.201(10); UCC § 1–201(10).

■ Moreover, even if the warranty disclaimer were insufficiently conspicuous to be enforceable against Fuller, Fuller's claim that Kinetic breached its implied warranty of fitness for a particular purpose would fail. Official Comment 2 to UCC § 2–315 notes that a " 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by a buyer which is peculiar to the nature of his business...." Initially, it is at least questionable whether the purpose to which Fuller planned to put the palletizer differed from the ordinary use to which such a machine is put. *See Recreatives v. Myers*, 67 Wis.2d 255, 264, 226 N.W.2d 474, 478 (1975). We need not address this question, however, because Fuller failed to establish that Kinetic had superior knowledge upon which Fuller was entitled to rely. Fuller points to two unusual aspects of its intended use, the first

being the sandy texture of its product, the second, its ignorance of the need for a bag flattener to precondition its product. As in *Wisconsin Elec. Power Co. v. Zallea Bros.*, 606 F.2d 697 (7th Cir.1979), however, the district court specifically found that the seller, in this case Kinetic, possessed no superior knowledge as to either. The district court found, first, that Fuller was in a better position than was Kinetic to know that the test pallets of grout it shipped to Kinetic's Wisconsin plant would settle in transit and would cease to adequately replicate the texture of Fuller's product when it came off the line at the Palatine plant. This defeats Fuller's argument that Kinetic was in a better position to know that the grout was unlikely to distribute evenly in the bag unless the bag containing the grout was first flattened. Second, it found that when Dirkx and Roese went to see the Kinetic palletizer used by Ringger Feed, both discussed the need for a bag flattener with the Midcentral representative who accompanied them. This defeats Fuller's argument that Kinetic—which neither made nor sold bag flatteners and had previously built only one bag palletizer—had superior knowledge concerning the standard practice of preconditioning bagged product in a flattener before palletizing it. We defer to these factual findings, neither of which is clearly erroneous, and draw from them a legal conclusion that Fuller has failed to establish that it was depending on Kinetic's "skill or judgment" in helping it select the right palletizer for its purposes.

## IV. CONCLUSION

For the foregoing reasons, the district court's decision to grant Kinetic's motion for directed verdict on Count I of Fuller's complaint, and its decision in favor of Kinetic on Counts II and III, as well as its decision for Kinetic on its counterclaim, are

AFFIRMED.