Josephine M. HAYES, Plaintiff–Appellant,

v.

OTIS ELEVATOR COMPANY, Defendant–Appellee.

No. 90–2997.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1991.

Decided Oct. 28, 1991.

Emmanuel F. Guyon (argued), Streator, Ill., for plaintiff-appellant.

James P. DeNardo, Christine L. Olson (argued), Charles P. Menges, Steven P. Rouse, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for defendant-appellee.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Josephine Hayes fell and was injured while riding up an escalator that was manufactured, installed, and maintained by Otis Elevator Co. (Otis). Mrs. Hayes brought suit against Otis on theories of negligence and products liability. The district court granted Otis' motion for summary judgment on the products liability claim on the ground that it was barred by the applicable Illinois statute of repose. The negligence claims were tried before a jury which, after the district court denied Mrs. Hayes' motion for a directed verdict, found in favor of Otis. Mrs. Hayes appeals the court's grant of summary judgment on the products liability claim as well as the court's denial of her motion for a directed verdict. For the following reasons, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

On March 23, 1986, Josephine Hayes and her family arrived at Water Tower Place, a multi-level shopping complex in Chicago. Immediately after entering the lobby, the group proceeded up the escalator toward the second floor in the following order: Mrs. Hayes' son, Patrick Hayes; her husband, William Hayes; her niece, Beverly Salon; her son's friend, Nancy Enis; Josephine Hayes herself; and her sister, Catherine Nycz.

Mrs. Hayes did not hold on to either handrail as she rode up the escalator. Between the ground floor and the second floor, there is a mezzanine—an intermediate landing at which one must step off the first escalator, walk twelve to fifteen feet forward, and board a second escalator.

Mrs. Hayes was unaware of this arrangement. At or near the point at which the first escalator meets the mezzanine, Mrs. Hayes fell and landed on the mezzanine floor. She injured her right wrist.

After helping his mother get up off the floor and sit down on a bench on the mezzanine, Patrick Hayes rode the down escalator to the ground floor and told the security guard, Lauren Winterhelt, about the incident. Mrs. Hayes soon followed with the rest of the group, and, after both Patrick and Mrs. Hayes had talked with Officer Winterhelt, Patrick hailed a cab and took Mrs. Hayes to a nearby hospital. Mrs. Hayes was diagnosed as having a fractured wrist. The wrist was placed in a cast and she was released. After personally examining the escalators and finding no defect, Officer Winterhelt filled out an incident report.

Mrs. Hayes, an Illinois resident, brought suit in Illinois state court against Otis, a New Jersey corporation with its principal place of business in Connecticut. Otis had manufactured, installed, and maintained the escalator. In Count I of her complaint, Mrs. Hayes alleged that Otis was negligent in (1) failing to maintain the escalator in a reasonably safe condition, and (2) failing to provide the escalator with adequate safety devices to warn passengers of the exit point at the mezzanine. In Count II of the complaint, Mrs. Hayes alleged that Otis was liable under Illinois' product liability statutes for defective and dangerous design of the escalator. Otis removed the case to federal court on diversity grounds.

B. *District Court Proceedings*

Before trial, the district court granted Otis' motion for summary judgment on the products liability claim on the ground that it was barred by Illinois' statute of repose for product liability actions. The negligence claims were tried before a jury. At trial, Mrs. Hayes testified that her fall was caused by an escalator malfunction, which caused the escalator to "jerk suddenly" and throw her three or four feet forward through the air. Mrs. Hayes' testimony was corroborated by her sister, Catherine Nycz, her son, Patrick Hayes, and her niece, Beverly Salon.

Mrs. Hayes' own expert witness, John Donnelly, however, testified that he did not believe that the escalator jerked violently. Rather, he believed Mrs. Hayes fell because "she wasn't paying attention to the end of the escalator ride, the first escalator. And when she came to the upper landing of the first escalator, not watching where she was going, she was thrown down—not thrown off but she fell down at the exit point." Tr. at 88. In Mr. Donnelly's expert opinion, had the escalator malfunctioned as Mrs. Hayes believed it did, there would have been a "catastrophic failure" of the equipment, and it would not have continued running. Mr. Donnelly further testified that it is the custom and practice in the escalator industry for the building owner or manager—not the escalator manufacturer—to provide warnings other than the small yellow pictographs at the entrance of the escalators advising passengers to hold on to the handrail and hold a child's hand. The law requires the escalator manufacturer to attach these pictographs, and Otis had complied.

At the end of her evidence, Mrs. Hayes moved for a directed verdict. The motion was denied, and Otis presented its case. The security guard, Officer Winterhelt, testified that Patrick Hayes had reported to her that he thought Mrs. Hayes caught her heel in the comb section at the top of the escalator. A second security guard, William Reilly, testified that he received a call from Patrick Hayes on April 2, 1986, informing Water Tower Place that Mrs. Hayes' wrist was indeed broken. Reading from his written report of the phone call, Officer Reilly testified that Patrick told him that Mrs. Hayes fell because her heel became stuck in the ridges in the step of the escalator and, when she reached the mezzanine, she was unable to free her foot. An Otis employee, Robert Walesa, who was the maintenance mechanic responsible for the escalators at Water Tower Place, testified that he inspected the escalator thirty-six hours after the incident and noticed no defects.

At the close of the evidence, the jury returned a verdict in favor of Otis.

## II

## ANALYSIS

### A. *Directed Verdict on Negligence*

Mrs. Hayes asks this court to reverse the district court's denial of her request for a directed verdict on her negligence claims.

### 1. Standard of review

■ Because "[a] motion for a directed verdict raises only a question of law," our review on this issue is de novo. *Daniel J. Hartwig Assoc. v. Kanner*, 913 F.2d 1213, 1221 (7th Cir.1990). In a diversity case such as this, we look to the law of the forum state for the legal standard for granting a motion for directed verdict. *Wiliams v. Jader Fuel Co.*, 944 F.2d 1388, 1393 (7th Cir.1991).[1] Illinois law is clear; its standard was set forth in *Pedrick v. Peoria & E. R.R. Co.*:

> In our judgment verdicts ought to be directed ... only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967).[2] Mrs. Hayes thus faces the herculean task of convincing this court that all the evidence, when viewed in the light most favorable to Otis, so overwhelmingly favors her negligence claims that no reasonable jury could find in favor of Otis.

### 2. Negligent maintenance claim

■ Under a service agreement with Water Tower Place, Otis had been responsible for maintaining the escalator from 1975, when it installed the escalator, through the time of Mrs. Hayes' fall in 1986. Mrs. Hayes contends that Otis was negligent in maintaining the escalator in a reasonably safe condition and that this negligence was the proximate cause of her fall and injury. Specifically, Mrs. Hayes contends that the poor condition of the escalator caused it to lurch violently and, consequently, to throw her three or four feet forward over the comb-plate junction onto the landing. Her testimony was supported, in varying degrees, by that of her niece, her son, and her sister.

But Mrs. Hayes' expert witness, Mr. Donnelly, testified that it was his opinion that her fall was caused by her being distracted by the "ambient environment" and not watching her step. Mr. Donnelly reached this conclusion because he believed that, had the escalator lurched violently enough to throw a passenger forward, there would have been a "catastrophic failure" of the equipment. There was no evidence of such a failure. Indeed, the security officer on the scene and an escalator mechanic both testified that they checked the condition of the escalator after the incident and found it to be running normally. Furthermore, the security officer on the scene testified that Patrick Hayes told her that Mrs. Hayes fell because her heel was caught in the escalator comb-plate. A second security officer also testified that Patrick Hayes called Water Tower Place a few days after the incident and reported that Mrs. Hayes fell because her heel was caught in the escalator step.

On the issue of whether Otis negligently maintained the escalator, Mrs. Hayes simply has not persuaded this court that the evidence, when viewed in its aspect most favorable to Otis, so overwhelmingly favors her claim that no contrary verdict based on that evidence could ever stand.[3]

### 3. Negligent failure to provide a warning device

■ Mrs. Hayes' second theory of recovery is that Otis failed to warn passengers

---

**1.** *Accord H.B. Fuller Co. v. Kinetic Systems Inc.*, 932 F.2d 681, 686 (7th Cir.1991); *A. Kush & Assoc. v. American States Ins. Co.*, 927 F.2d 929, 938 (7th Cir.1991); *Consolidated Bearings Co. v. Ehret–Krohn Corp.*, 913 F.2d 1224, 1227 (7th Cir.1990); *Kanner*, 913 F.2d at 1221.

**2.** *Accord Jader Fuel*, at 1393; *A. Kush*, 927 F.2d at 938; *Consolidated Bearings*, 913 F.2d at 1227.

**3.** Alternatively, Mrs. Hayes argues that the district court should have directed a verdict for her on this claim because counsel for Otis admitted in closing argument that Otis was liable. Relying, by analogy, on *Lowe v. Kang*, 167 Ill.App.3d 772, 118 Ill.Dec. 552, 521 N.E.2d 1245 (1988), Mrs. Hayes points to the following portion of Otis' final argument:

to keep a proper lookout or to step off the escalator at the intermediate landing area. Mrs. Hayes was unable to persuade the district court that Otis had any such duty. She cited no Illinois statute or case that imposes such a duty. Mrs. Hayes' own expert witness, Mr. Donnelly, testified that there are no codes, standards, customs, or practices which place on the manufacturer of an escalator the type of duty contemplated by Mrs. Hayes. Indeed, Mr. Donnelly testified that it is the custom and practice in the escalator industry for the building owner or manager to provide any such warning to passengers.[4] Furthermore, Mrs. Hayes did not submit any evidence to demonstrate that Otis assumed, contractually or otherwise, any additional duties which might otherwise be imposed upon the owner or manager of Water Tower Place.[5] The district court thus properly refused to direct a verdict for Mrs. Hayes on this theory.[6]

### B. Summary Judgment on Products Liability

Count II of Mrs. Hayes' complaint alleged that Otis was liable under Illinois' duty to warn of the exit point of the escalator, or a duty to make the surrounding setting less distracting. Premises liability, however, concerns the duties of premises owners, occupiers, or possessors. See Illinois' Premises Liability Act, Ill.Ann.Stat. ch. 80, ¶¶ 301 to 304 (Smith–Hurd 1987); J. Page, The Law of Premises Liability 1–6 (2d ed. 1988). Because Otis is not the owner, occupier, or possessor of Water Tower Place, these cases are inapposite.

Mrs. Hayes also submits that Otis should be held liable to her for breaching its warranties under U.C.C. §§ 2–313, 2–314, and 2–315. Ill. Ann.Stat. ch. 26, ¶¶ 2–313 to 2–318 (Smith–Hurd 1963). But Illinois courts have not expanded to business invitees the scope of protection afforded third-party beneficiaries under U.C.C. § 2–318. In Miller v. Sears, Roebuck & Co., 148 Ill.App.3d 1022, 102 Ill.Dec. 664, 500 N.E.2d 557 (1986), the Appellate Court of Illinois reasoned that the Illinois legislature's choice of the most restrictive alternative form of section 2–318 implied that the legislature wanted to limit protection to only those third parties listed in the statute. For this reason, the court expressly refused to extend protection to business customers of a purchaser. Miller, 500 N.E.2d at 559, 148 Ill.App.3d 1022, 102 Ill.Dec. 664. One year later, in Whitaker v. Lian Feng Machine Co., 509 N.E.2d 591, 594–95, 156 Ill.App.3d 316, 108 Ill. Dec. 895 (1987), the Appellate Court of Illinois extended third-party beneficiary protection to those employees who are foreseeable users of a good. In so holding, the Whitaker court expressly rejected the ratio decidendi of Miller. Whitaker did not, however, upset the Miller court's ultimate holding regarding the exclusion of business invitees from the scope of section 2–318. Therefore, because Mrs. Hayes was not the purchaser of the escalator, nor within the class of third-party beneficiaries to which Illinois has chosen to extend protection, Otis had no duty to Mrs. Hayes under U.C.C. §§ 2–313, 2–314, or 2–315.

> You have been asked to render a verdict in this case in the $48,000 to $67,000 range. Well, if you reach this point, and I submit you won't, I suggest a verdict in this case of $25,000.
>
> Then comes the third or final phase of this case. You're going to have to decide whether Mrs. Hayes contributed to her own accident, and you will be instructed that there are two ways in which Otis believes she contributed to her own injuries. One was not holding the handrail which would have provided her balance; and secondly, not paying attention to where she was going.
>
> In that same vein, we remember that she was riding up an escalator with her sister behind her who we don't think has ever been there. And you are asked to believe that there was no conversation going on between them, nothing occurred between them. Mrs. Hayes simply was not paying attention.
>
> On that basis we believe that 95 percent of the cause of this occurrence is the fault of Mrs. Hayes. If, in fact, any fault at all is leveled against Otis Elevator Company. I submit that if you reach that point and are required to submit a percentage after your own discussions, that percentage figure is one that is appropriate.
>
> However, again I say, Otis is not believing that this is a case in which they are to be found liable.

Tr. at 381. Otis qualified its estimation of the fault percentages with "[i]f, in fact, any fault at all," "if you reach that point," "Otis is not believing that ... they are to be found liable," and similar phrases. In context, the trial court was therefore correct to rule that Otis had not admitted liability.

4.  As the manufacturer and installer of the escalator, Otis had only the duty, irrelevant to this case, to attach small yellow pictographs to the escalators, at each entrance, warning passengers to hold on to the handrail and hold a child's hand. Evidence submitted to the district court demonstrates that this duty was met. Ex. 10.

5.  Mrs. Hayes cites to cases involving premises liability to support her argument that Otis had a

6.  On appeal, Mrs. Hayes also argues a third theory of recovery in negligence: res ipsa loquitur. However, because Mrs. Hayes did not

products liability law for the defective and dangerous design of the escalator. The trial court granted Otis' motion for summary judgment on this count because it was barred by Illinois' statute of repose for products liability actions. Ill.Ann.Stat. ch. 110, ¶ 13–213(b) (Smith–Hurd 1984). For support, the trial court cited *Taylor v. Raymond Corp.*, 719 F.Supp. 738, 739 (N.D.Ill. 1989), *aff'd*, 909 F.2d 225 (7th Cir.1990), a recent application of Illinois' rule that causes of action which accrue more than ten years after the date of sale to the "initial user" are time-barred.

### 1. Standard of review

"We review *de novo* the decision of a district court granting summary judgment. Summary judgment is only appropriate when the pleadings, depositions, affidavits, answers to interrogatories, and admissions reveal that no reasonable jury could find for the nonmoving party." *Doe v. Allied–Signal, Inc.*, 925 F.2d 1007, 1008 (7th Cir.1991) (citations omitted).

### 2. Application of the limitations period

Otis sold the escalators to Water Tower Place in 1975 and installed them that same year. Mrs. Hayes was injured more than ten years later, in 1986. While Mrs. Hayes concedes that more than ten years had passed since Otis sold and installed the escalator, she points to the fact that Otis had maintained the escalators "continuously since their installation." Because Mrs. Hayes could not cite a single case in which performance under a maintenance contract was sufficient to toll the statute of repose, the district court rejected her argument.

On appeal, Mrs. Hayes renews her argument—still without the benefit of any case support—that Otis' performance under the maintenance agreement tolled the statute of repose. Mrs. Hayes suggests that Otis' continuing maintenance of the escalator constituted a warranty for a longer period, as per the phrase in subsection (b) of the repose statute: "unless the defendant expressly has warranted or promised the product for a longer period."[7] But while the statute provides an exception for an express warranty or promise, Mrs. Hayes argues only that Otis' maintenance of the escalator constituted an implied warranty or promise. Again, Mrs. Hayes is without the benefit of case support for this argument.

Indeed, there is a separate subsection of the statute which addresses the issue of a continuing relationship between the manufacturer and the purchaser. Subsection (e) of paragraph 13–213 provides that, even if the manufacturer replaces a component part with one of similar design, the statute is not tolled or restarted.[8] In light of this statutory provision, we cannot conclude that the Illinois legislature intended for ordinary maintenance to toll or restart the repose period.

---

present this theory of recovery in the district court, she has waived her right to rely upon it. *Colon v. Schneider*, 899 F.2d 660, 670 (7th Cir. 1990) ("arguments raised for the first time on appeal are waived"); *Erff v. MarkHon Indus.*, 781 F.2d 613, 618 (7th Cir.1986) ("We have repeatedly held that 'it is axiomatic that arguments not raised below are waived on appeal.' ").

**7.** Subsection (b) provides:

(b) Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires

earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a longer period and the action is brought within that period. Ill.Ann.Stat. ch. 110, ¶ 13–213(b) (Smith–Hurd 1984).

**8.** The statute provides:

(e) Replacement of a component part of a product unit with a substitute part having the same formula or design as the original part shall not be deemed a sale, lease or delivery of possession or an alteration, modification, or change for the purpose of permitting commencement of a product liability action based on the doctrine of strict liability in tort ... when such action would otherwise be barred according to the provisions of subsection (b) of this Section.

As a matter of law, Mrs. Hayes' products liability claim against Otis was barred by Illinois' statute of repose for products liability actions. Therefore, the district court was correct to enter summary judgment in favor of Otis on this claim.

### Conclusion

For the foregoing reasons, the judgment of the district court, denying Mrs. Hayes' request for a directed verdict and granting Otis' motion for summary judgment on the products liability claim, is affirmed.

AFFIRMED.

Ill.Ann.Stat. ch. 110, ¶ 13–213(e) (Smith–Hurd 1984). In *Reese v. National Mine Service Co.,* 672 F.Supp. 1116, 1117 (S.D.Ill.1987), a district court interpreted this provision to bar a products liability claim for injury caused by the malfunction of a coal miners' shuttle car even though the manufacturer had "completely disassembled the shuttle car, repaired the chassis, made some minor modifications and reassembled the car replacing many of the old parts with new ones," just three years before the injury.