972 F.2d 351
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James Ray LOWERY, Plaintiff/Appellant,
v.
Warren YOUNG, Thomas J. Borgen, Michael Traut, et. al.,
Defendants/Appellees.
 Nos. 89-3711, 91-1593.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1992.*
Decided July 28, 1992.
Rehearing and Rehearing In Banc
Denied Sept. 14, 1992.
 
 Before CUDAHY and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 James Lowery, an inmate at the Waupun Correctional Institution (WCI), alleges that prison officials denied him psychiatric treatment in violation of the Eighth Amendment. See 42 U.S.C. § 1983. The district court entered summary judgment against Lowery on all claims and later denied a motion pursuant to Fed.R.Civ.P. 60(b). We affirm the district court in all respects.
 
 A. BACKGROUND
 
 2
 We simply repeat the magistrate's complete and undisputed statement of facts:
 
 
 3
 The plaintiff is now and was at all times relevant to this action incarcerated at WCI. Defendant Warren Young was the superintendent of WCI. On September 15, 1987, Darrell Kolb assumed the position of acting superintendent. Defendant Thomas Borgen is the security director at WCI. Defendant Michael Traut is the program review coordinator at WCI. Defendant Russell Leik is the classification chief for the Bureau of Adult Institutions within the Division of Corrections. Defendant Sally Giebel was plaintiff's social worker at WCI from May 9, 1986 to August 15, 1987. She is now employed at the Kettle Moraine Correctional Institution.
 
 
 4
 Defendant Darrell Kolb is acting superintendent at WCI and has held this position since September 15, 1987. Defendant Thomas Biever is the supervisor of the Clinical Services Unit at WCI. Defendant Sheila Dresen is the director of the Bureau of Clinical Services within the Division of Corrections. Finally, defendant Kent Mannis, M.D., is the chief psychiatrist for the Bureau of Clinical Services within the Division of Corrections.
 
 
 5
 In November 1985, the plaintiff was convicted of first degree sexual assault, armed robbery, and false imprisonment (with a weapon) in the Kenosha county Circuit Court, State of Wisconsin. On January 9, 1986, he was sentenced to sixty-five (65) years in prison. The next day he was received at Dodge Correctional Institution (DCI) for orientation to the correctional system. On January 21, 1986, he was seen by Dr. Joy Ann Kenworthy to evaluate his emotional/mental health needs. Dr. Kenworthy concluded the plaintiff should be transferred to WCI to its Mental Health Unit, if necessary, for observation concerning a multipel personality disorder. On May 9, 1986, the plaintiff was transferred to WCI. On May 15, 1986, the plaintiff was seen by the Program Review Committee at WCI. Defendant Sally Giebel was assigned to be the plaintiff's social worker at the WCI. On July 1, 1986, Dr. Priscilla Marotta, psychologist, recommended that plaintiff be transferred to the Wisconsin Resource Center, a medium security facility for treatment of a multiple personality disorder. Upon subsequent review of this recommendation with Social Worker Sally Giebel, Dr. Marotta altered her recommendation and instead recommended that plaintiff be transferred to Columbia Correction Institution. On August 14, 1986, WCI's Program Review Committee decided to keep the plaintiff's maximum security rating and to continue his imprisonment at WCI with a new recall date of February 1987.
 
 
 6
 On October 16, 1986, the plaintiff was placed in temporary lockup in WCI's Adjustment Center pending the investigation of a possible escape attempt until October 29, 1986 and then was subsequently released back to the Mental Health Unit. On November 8, 1986 the plaintiff was placed in partial observation in the Mental Health Unit at WCI because of staff concerns about his behavior, but was removed that day and returned to his cell. On December 4, 1986, WCI's Program Review Committee recommended and decided that plaintiff should be transferred to Columbia Correctional Institution. On May 11, 1987, plaintiff was transferred to Mendota Mental Health Institute (MMHI) upon the recommendation of Dr. Arnesen (approved by Superintendent Young).
 
 
 7
 From May 1986 to March 11, 1987 the plaintiff was seen on a regular basis by Clinical Services staff at WCI and in particular by Dr. Richard Arnesen, psychiatrist, and George Kaemmerer, Crisis Intervention Worker. They met with him on a frequent basis; it was Dr. Arnesen's diagnosis that the plaintiff had a multiple personality disorder. In December 1986, the plaintiff exhibited signs of self-inflicted wounds and as a result, Dr. Arnesen recommended an emergency transfer to MMHI. The plaintiff was transferred to MMHI on May 11, 1987 and was held there until September 16, 1987 for evaluation and treatment of the plaintiff at MMHI were Drs. Robert Miller, Gary Maier, and Gregory VanRybroek and Social Worker Lou Roach. On September 1, 1987, defendants Dresen, Mannis, and Biever met with MMHI's staff and were informed that plaintiff did not suffer from a multiple personality disorder and further treatment for that condition would only encourage further malingering and could delay or interfere with plaintiff facing and discussing the true nature of his mental health problem. Dr. Arnesen, plaintiff's treating psychiatrist at WCI, was also present at this meeting and expressed his disagreement with these conclusions. After the September 1, 1987 meeting, defendants Dresen and Mannis were informed by Dr. Arnesen that he did not accept the staff's diagnosis or treatment recommendations and wished to continue treating the plaintiff for multiple personality disorder. As director of the Bureau of Clinical Services, Dresen subsequently issued a directive to Dr. Arnesen that he should have no further contact with the plaintiff. On September 16, 1987 plaintiff was transferred back to WCI from MMHI and was placed in observation status in the Adjustment Center. On September 22, 2987 the plaintiff was released from adjustment status and was placed back into the general population at WCI.
 
 
 8
 Since plaintiff's return to WCI, he has been seen on a regular basis by George Kaemmerer, a member of the Clinical Services Staff....
 
 
 9
 On February 11, 1987, Lowery filed his first complaint against the staff of WCI (No. 87-C-165). In that complaint, Lowery alleged that defendants Young, Borgen, Leik and Traut displayed deliberate indifference to his medical needs in violation of the Eighth Amendment and 42 U.S.C. § 1983. Lowery filed a second case on June 30, 1987, this time alleging that defendant Giebel violated his rights by disseminating false information and by undermining his transfer to the Wisconsin Resource Center (No. 87-C-792). On October 27, 1987, Lowery sued a third set of defendants under 42 U.S.C. § 1983 (No. 87-C-1225).
 
 
 10
 The defendants filed a motion to consolidate the three cases for all purposes, which was granted. They then moved for summary judgment. After a favorable recommendation by a magistrate judge, the motion was granted in favor of all the defendants.
 
 
 11
 Lowery now appeals from the district court order, pursuing only Eighth Amendment claims.
 
 B. ANALYSIS
 
 12
 This court reviews de novo the district court's grant of summary judgment. Hayes v. Otis Elevator Co., 946 F.2d 1272, 1277 (7th Cir.1991). When assessing the decision, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332 (7th Cir.1991). We allow summary judgment if the record, when viewed in this light, presents "no genuine issue of material fact [such] that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56.
 
 
 13
 To survive summary judgment in an Eighth Amendment medical case, a prisoner must show that prison officials acted deliberately indifferent in the face of a serious medical or psychological need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir.1977) (the law recognizes no distinction between physical and psychological medical services). Deliberate indifference includes intentional and reckless conduct, but not negligence or medical malpractice. Estelle, 429 U.S. at 106; McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir.1991), cert. denied, 112 S.Ct. 1265 (1992).
 
 
 14
 A. Case Number 87-C-165.
 
 
 15
 In his first case, Lowery claimed that Young, Borgen, Leik, and Traut ignored Dr. Arnesen's orders and refused to transfer him to a mental hospital. He also alleged the Young and Borgen exacerbated his condition by placing him in "the hole" and by searching his cell. Lowery sued the defendants in both their official and individual capacities.[1]
 
 
 16
 Lowery's official capacity action fails to state a claim upon which relief may be granted. An official capacity claim is the equivalent of a suit against the State. Duckworth v. Franzen, 780 F.2d 645, 649 (7th Cir.1985), cert. denied, 479 U.S. 816 (1986). This means that the State's "policy or custom" must have played a part in the constitutional deprivation. Kentucky v. Graham, 473 U.S. 159, 166 (7th Cir.1985). Because Lowery never points to an official policy, we cannot consider his official capacity claims.
 
 
 17
 Lowery's individual capacity claims fail because he lacks sufficient evidence to survive summary judgment. A party opposing summary judgment may not rest on the allegations in the pleadings; a bare contention is insufficient to raise a factual issue. Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1302 (7th Cir.1991). The party raises an adequate issue of fact when he presents evidentiary material that, if reduced to admissible evidence, may allow him to carry his burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).
 
 
 18
 Lowery must prove that the defendants personally participated in or caused unconstitutional actions. Duckworth, 780 F.2d at 650. Showing that the defendants acted in a supervisory role is insufficient because the doctrine of respondeat superior does not apply to § 1983 claims. Id.
 
 
 19
 All four of Lowery's named defendants occupy supervisory roles in the prison: Young as Warden, Borgen as Assistant Warden of Security, Leik as Director of Classification, and Traut as Coordinator of the Program Review Committee. Young's, Borgen's, and Leik's individual participation is documented only by Lowery's own affidavit. This affidavit, however, contains only conjecture and hearsay. See Fed.R.Civ.P. 56(e) (personal knowledge of facts is necessary); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989), cert. denied, 493 U.S. 1023 (1990). For example, it alleges that Young and Borgen ordered the guards to search his cell and throw him in lockup but never states that Lowery observed the defendants direct the guards.
 
 
 20
 Lowery provides slightly more proof of Traut's involvement. Traut's affidavit shows that the committee he chaired gave Lowery a maximum security rating and recommended a transfer to the Columbia Correctional Institution. The affidavit, however, does not allege that Traut involved himself in, or supported the decision. Holding him liable simply for chairing the committee would amount to respondeat superior liability[2].
 
 
 21
 We therefore affirm summary judgment in favor of Young, Borgen, Leik, and Traut.
 
 
 22
 B. Case Number 87-C-192.
 
 
 23
 We also affirm summary judgment in favor of Sally Giebel, who Lowery claims violated his Eighth Amendment rights by preventing a transfer to the Wisconsin Resource Center (WRC)[3]. Although the record does show that Giebel recommended against transferring Lowery to the WRC, it also shows that the recommendation was justified by security concerns. A prison official may enact a security measure, even one that impinges on medical needs, if the measure "was applied in a good faith effort to maintain or restore discipline." Whitley, 475 U.S. at 320-21. In such situations, an official is liable only for acting "maliciously and sadistically for the very purpose of causing harm." Id.; see also Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 761 (3d Cir.1979) (a prison's desire to control drug dissemination in prison justifies withholding prescribed methadone).
 
 
 24
 Based on this, Giebel is not liable for her recommendation. Giebel, according to the record, recommended against transfer because of Lowery's maximum security rating. Giebel considered WCI, a maximum security prison, a more appropriate location for Lowery than the medium security WRC. Because Giebel made her decision based only on Lowery's security risk and without any evidence of animus, summary judgment is appropriate. Compare Caldwell v. Miller, 790 F.2d 589, 603 (7th Cir.1986) (a prisoner has no right "to question his transfer from one institution to another, whether intrastate, or interstate.").
 
 
 25
 C. Case Number 87-C-1225.
 
 
 26
 We also affirm summary judgment in favor of Kolb, Biever, Dresen, and Mannis. Lowery argues that these defendants, the Warden and medical team at Waupun, prevented him from seeing Dr. Arnesen.[4] But the evidence shows that, although the defendants forbade Arnesen from seeing Lowery, they nonetheless provided him psychological treatment. This treatment fully complied with the suggestions of the medical staff at MMHI, who suggested that further treatment for multiple personality disorder would only exacerbate Lowery's condition.
 
 
 27
 As a result, this becomes a case of conflicting medical opinions. Where medical experts disagree, a prison official does not act indifferently by following the advice of one of the experts. Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.1974), vacated on other grounds sub nom Cannon v. Thomas, 419 U.S. 813 (1974) (a difference of opinion does not raise a material issue of fact); Jorden v. Farrier, 788 F.2d 1347 (8th Cir.1986) (states in dicta that following the advice of one treating medical official over another does not raise a constitutional claim); see also United States v. Rovetuso, 768 F.2d 809, 825 (7th Cir.1985), cert. denied, 474 U.S. 1076 (1986) (a prisoner has no right to a doctor of his own choice).
 
 D. Lowery's Rule. 60(b) Claims
 
 28
 On February 1, 1991, over one year after the court's final order, Lowery filed a motion pursuant to Rules 60(b)(3), 60(b)(5), and 60(b)(6). Because a motion under Rule 60(b)(3) must be brought within one year of judgment, see Fed.R.Civ.P. 60(b), and because the motions under 60(b)(5) and 60(b)(6) are irrelevant given the disposition of this case, we affirm the district court's denial of the motion.
 
 III. Conclusion
 
 29
 For the forgoing reasons, we AFFIRM the district court's grant of summary judgment and its denial of the Rule 60(b) motion.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 The district court granted summary judgment based on res judicata, but we may affirm on any ground finding support in the record. Box v. A. & P. Tea Co., 772 F.2d 1372, 1376 (7th Cir.1985), cert. denied, 478 U.S. 1010 (1986)
 
 
 [2]
 Even if Lowery could prove Traut's personal involvement, he could not survive summary judgment. The only evidence on record indicates that the committee had security interests in mind when it gave Lowery a maximum security rating. Lowery has provided no proof that the committee acted in order to hurt or punish him. See Whitney v. Albers, 475 U.S. 312, 320-21 (1986). The claims against Traut are, therefore, similar to the claims discussed in part B of this order
 
 
 [3]
 In his complaint, Lowery also raises defamation claims. We assume that he did not intend to pursue these claims on appeal because although defamation may raise Due Process concerns, see Bone v. Lafayette, 763 F.2d 295, 298 (7th Cir.1985), Lowery pursues deliberate indifference, not due process, claims on appeal
 
 
 [4]
 In his complaint against these defendants, as in his complaint against Giebel, Lowery raised defamation issues. Because defamation is not an Eighth Amendment issue, and because Lowery only makes Eighth Amendment claims on appeal, we consider the defamation issues waived