Harold "Bill" BAILEY and Carole Bailey, Plaintiffs,

v.

SKIPPERLINER INDUSTRIES, INC. and CATERPILLAR, INC., Defendants.

No. 3:01CV0361 CAN.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 22, 2003.

John C Theisen, Holly A Brady, Theisen and Associates LLC, Fort Wayne, for Harold "Bill" Bailey, Carole Bailey, plaintiffs.

Thomas A Herr, John F Lyons, Michael H Michmerhuizen, Barrett and McNagny, Fort Wayne, Brian W Bell, Angela R Kar-

ras, Swanson Martin and Bell—Chi/IL, Chicago, IL, for Skipperliner Industries Inc, Caterpillar Inc, defendants.

## MEMORANDUM AND ORDER

NUECHTERLEIN, United States Magistrate Judge.

Plaintiffs Harold and Carole Bailey ("the Baileys") initiated suit against Defendants Skipperliner Industries, Inc. ("Skipperliner") and Caterpillar, Inc. ("Caterpillar") on May 16, 2001. All parties consented to this Court's jurisdiction on July 16, 2001, pursuant to 28 U.S.C. § 636(c). On May 12, 2003, Caterpillar filed a motion for summary judgment followed by Skipperliner's motion for partial summary judgment filed on May 13, 2003. The parties also filed various motions before and after Defendants' filings including Plaintiffs' motion to strike, filed on April 24, 2003; and Skipperliner's first and second motions to strike, filed on May 13, 2003, and June 2, 2003, respectively. This Court conducted oral arguments on Defendants' motions for summary judgment on August 11, 2003. For the following reasons, Plaintiffs' motion to strike [Doc. No. 55] is **DENIED AS MOOT**; Skipperliner's motion for partial summary judgment [Doc. No. 66] is **GRANTED IN PART** and **DENIED IN PART**; Skipperliner's first motion to strike [Doc. No. 72] is **GRANTED IN PART**, and **DENIED AS MOOT IN PART**; Caterpillar's motion for summary judgment [Doc. No. 77] is **GRANTED IN PART** and **DENIED IN PART**; and Skipperliner's second motion to strike [Doc. No. 88] is **DENIED AS MOOT.**

## I. BACKGROUND

This case concerns the purchase and subsequent malfunction of a fifty-four foot houseboat. At all times relevant to this litigation, Plaintiffs Harold and Carole Bailey ("the Baileys") were citizens and residents of Michigan City, Indiana. Defendant Skipperliner Industries, Inc. ("Skipperliner") is a Wisconsin Corporation with its principal place of business in LaCrosse, Wisconsin. Defendant Caterpillar, Inc. ("Caterpillar") is a Delaware corporation with its principal place of business in Peoria, Illinois.

### A. Factual History

All relevant background information, taken in the light most favorable to the nonmoving party, is as follows:

### 1. Plaintiffs' Purchase of the Boat

In August 1996, Plaintiffs visited a boat show in Michigan City, Indiana, where they met with Dan Nelson, vice president of Skipperliner Industries. At that time, Plaintiffs were interested in purchasing a used boat for their retirement, and Nelson showed Plaintiffs a boat he had at the show. That evening, Nelson and John Kitchin, a Skipperliner representative, visited the Baileys and convinced them to visit Skipperliner's facilities in LaCrosse, Wisconsin to view Skipperliner's products.

Plaintiffs visited LaCrosse twice during September 1996, where they viewed several of Skipperliner's boats. Plaintiffs made a third trip to LaCrosse on October 12, 1996, and signed an agreement to purchase a new 1996 Motoryacht 543.[1] Upon purchasing the boat, Nelson informed the Baileys that the boat had been ordered and built for another customer, Dan Sawicki, and that Sawicki had refused delivery. After arranging financing, the Baileys took

---

1. Plaintiffs maintain that the boat purchased on October 12, 1996, was "the same boat they initially saw at the boat show in Michigan City." (Pla. Resp. at 2). Skipperliner makes no such contention.

possession of the boat on November 22, 1996.

### 2. *Plaintiffs' Maiden Voyage*

Upon receipt of the boat, Plaintiffs sailed from LaCrosse to Cuba Landing, Tennessee. Plaintiffs' initial voyage, however, was marked with difficulties. On their trip to Tennessee, the boat's refrigerator stopped running, the electronic compasses would not function, the flag pole came loose and fell off, the anchor malfunctioned, the seal around the head leaked, and the couch included with the boat was not a sofa bed as provided in the contract. Most notably, the Baileys noticed excessive amounts of soot from the boat's diesel engines accumulating on the boat's transom.[2] The boat's engines were manufactured by Caterpillar. On December 26, 1996, the Bailey's wrote Skipperliner, listing the items needing repair. Plaintiffs' letter, however, did not note that the engines were malfunctioning. *See* (H. Bailey Dep. Ex. GG).

### 3. *Further Problems*

The Baileys kept the boat in Tennessee during the winter of 1996, and cruised the boat from Cuba Landing to their home port in Michigan City in April 1997. During their April 1997, trip, Plaintiffs noticed further accumulation of diesel soot on the boat's transom and flybridge.[3] The Baileys used the boat periodically throughout the summer and cruised the boat back to Cuba Landing in September 1997. The Baileys sent Skipperliner several letters throughout their first year of boat ownership, none of which raised the soot accumulation problem from the boat's diesel

engines. *See e.g.* (H. Bailey Dep. Ex. GG, II, JJ, KK, MM).

As Plaintiffs began to use the boat more frequently from 1997 to 1999, they experienced many other difficulties with the boat and the engines, including excessive fuel consumption and occasional engine breakdowns. The Baileys first contacted Caterpillar about their engine problems in 1999, resulting in several repairs and Caterpillar's eventual rebuilding the boat's starboard engine and replacing the boat's port engine in 1999. The engines showed significant improvement following the 1999 repairs, but began to experience the same problems in the spring and fall of 2000.

## B. *Procedural History*

### 1. *Parties' Initial Pleadings*

Plaintiffs initiated this action on May 16, 2001. Plaintiffs' amended complaint, filed on February 20, 2002, alleges six counts against Skipperliner: (1) fraud, (2) breach of contract relating to the purchase of Plaintiffs' boat, (3) breach of contract relating to Skipperliner's agreement to repair the boat, (4) breach of express warranty, (5) breach of implied warranty of merchantability, and (6) breach of implied warranty of fitness for a particular purpose. The complaint also alleges three counts against Caterpillar: (1) breach of express warranty, (2) breach of implied warranty of merchantability, and (3) breach of agreement to repair.

Skipperliner filed its answer to Plaintiffs' amended complaint on April 15, 2003. Skipperliner's answer included a counterclaim against Plaintiffs for attorney fees

---

**2.** A "transom" is defined as "any of several transverse timbers or beams secured to the sternpost of a boat [or] the planking forming the stern of a square-ended boat." *Merrian–Webster Dictionary* (2003).

**3.** A "flybridge" is defined as "an open deck on a cabin cruiser located above the bridge on the cabin roof and usually having a duplicate set of navigating equipment." *Merrian–Webster Dictionary* (2003).

and a cross claim against Caterpillar for breach of contract related to Caterpillar's alleged failure to satisfy its repair obligations to Plaintiffs.

### 2. Pending Motions

At present, there are five pending motions in this case. This Court has jurisdiction over these motions pursuant to 28 U.S.C. §§ 1332 and 636(c).

#### a) Caterpillar's Motion for Summary Judgment

Caterpillar moved for summary judgment on May 12, 2003. Caterpillar's motion concerns all three counts of Plaintiffs' claim.

#### b) Skipperliner's Motion for Summary Judgment

Skipperliner moved for partial summary judgment on May 13, 2003. Skipperliner's motion requests summary judgment on four counts: (1) Plaintiffs' fraud claim, (2) Plaintiffs' breach of contract claims, (3) Plaintiffs' claim for breach of express warranty, and (4) Plaintiffs' claim for punitive damages.

#### c) Parties' Motions to Strike

The remaining motions concern the parties' motions to strike various portions of each parties' filings. This order will individually address the instances where it is necessary to rely on materials subject to each motion to strike. All other objections which are not specifically addressed in this order, and hence not relied upon, are **DENIED AS MOOT.**

### 3. Conceded Claims

In their response to Defendants' motions, Plaintiffs concede their claims against Skipperliner as to Skipperliner's alleged breach of contract to repair the boat, (Pla. Resp. at 35), and against Cater-

pillar as to Caterpillar's alleged breach of an implied warranty of merchantability. (Pla. Resp. at 27). Defendants' motions for summary judgment as they pertain to these claims are therefore **GRANTED.**

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 922 (7th Cir.2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *King v. Preferred Technical Group,* 166 F.3d 887, 890 (7th Cir.1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1088 (7th Cir.2000); *See also* N.D. Ind. L.R. 56.1(b) ("In determining a motion for summary judgment, this Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted . . . as supported by the depositions, discovery responses, affidavits, and other admissible evidence on file.").

Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### III. CHOICE OF LAW

■ In their response brief, Plaintiffs contend that Wisconsin law, rather than Indiana law, applies to this case. When faced with a conflicts of law issue, a federal court must apply the choice of law provisions from the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Hence, this Court must apply Indiana's choice of law rules.[4] Because Plaintiffs' case addresses several separate theories—fraud, breach of contract, and breach of warranty—each theory must be addressed under a separate standard.

### A. *Indiana Law Governs the Statutes of Limitation for Plaintiffs' Claims*

A major difference between Wisconsin and Indiana law, and perhaps the chief reason for Plaintiffs' raising a conflicts issue, is the states' divergent statutes of limitation on contract claims. Indiana and Wisconsin's statutes of limitation are virtually identical except for their length. Wis-

consin law allows plaintiffs six years to file a claim for breach of contract, Wis. Stat. § 402.725(1), while Indiana law only allows plaintiffs four years to assert a claim. Ind.Code 26–1–2–725(1).

■ Unlike other procedural rules, statutes of limitation are considered substantive for *Erie* purposes. *Jinks v. Richland County*, —— U.S. ——, ——, 123 S.Ct. 1667, 1672, 155 L.Ed.2d 631 (2003) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). Because this Court, in exercising diversity jurisdiction, must follow Indiana's substantive law, this Court must determine how an Indiana court would address this issue.

■ Under Indiana law, statutes of limitation are procedural, rather than substantive, and are not subject to parties' choice of law disputes. *JKL Components Corp. v. Insul–Reps, Inc.*, 596 N.E.2d 945, 950 (Ind.Ct.App.1992); *Lee v. Estate of Cain*, 476 N.E.2d 922, 924 (Ind.Ct.App.1985); *see also Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts Inc.*, 717 F.Supp. 1374, 1385 (S.D.Ind.1989) ("Because in Indiana statutes of limitations are procedural in nature, Indiana choice of law rules state that the statute of limitations of the forum state, Indiana, will apply") *aff'd*, 917 F.2d 278 (7th Cir.1990).[5]

---

4. This Court initially notes that, while it must apply state law to state issues under diversity jurisdiction, Seventh Circuit precedent applies to all procedural issues in this case. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. Classifying statutes of limitation as procedural rules not subject to choice of law concerns is a theme held by states following the Second Restatement of Conflicts. Richman, William M., *et al. Understanding Conflict of Laws* § 90(a) (2d ed. 1993) ("Limitation periods traditionally have been characterized as

procedural for choice of law purposes."); *see also* Brazener, Robert A., *Choice of Law as to Applicable Statute of Limitations in Contract Actions*, 78 A.L.R.3d 639 § 2 (1977) ("Generally speaking, limitation laws have traditionally been held to affect only the remedy and not the substantive right, and it is therefore usually held that in the absence of a statute to the contrary, the limitation law of the place where the action is brought and the remedy is sought to be enforced will govern the timeliness of the action.").

In their sur-reply, Plaintiffs concede that the current standard in Indiana is to treat statutes of limitation as procedural for choice of law purposes, but state that they "believe that their claims for breach of warranty, if considered today, would be viewed differently by the Supreme Court of Indiana, and Wisconsin's statute of limitations would apply." (Pla. Sur–Reply at 5).

Plaintiffs cite several cases in support of their theory. Plaintiffs first cite *Horvath v. Davidson*, 148 Ind.App. 203, 264 N.E.2d 328 (1970) which stated the axiom that certain statutes of limitation which are "so intimately connected with the right [at issue] must be enforced in the forum state along with the substantive right." *Id.* at 331. *Horvath* dealt with a statute of limitation conflict regarding a personal injury case in which the Indiana Court of Appeals held that Indiana's more restrictive statute should apply as a procedural rule. *Id.* at 335; *see also Id.* at 332 (citing *Hendricks v. Comstock*, 12 Ind. 238 (1859); *Sansberry v. Hughes*, 174 Ind. 638, 92 N.E. 783 (1910)) ("Without exception the statute of limitations has been considered procedural in Indiana.").

Plaintiffs next cite *Dart Industries, Inc. v. Adell Plastics, Inc.*, 517 F.Supp. 9 (D.C.Ind.1980), and argue that the court in *Dart* "left open the possibility that some statute of limitations may be substantive." (Pla. Sur–Reply at 6). The court in *Dart* applied Indiana's statute of limitation to a contract case as a procedural rule, while noting that the statute would apply "even assuming a statute of limitations [was] substantive and should be applied in accordance with traditional principles on conflicts of law." *Dart*, 517

F.Supp. at 10. The court only addressed the contacts between Indiana and the litigation to buttress its decision, not to offer the possibility of treating the Indiana statute as substantive.

Lastly, Plaintiffs cite *Theroux v. Northern Pacific Railroad*, 64 F. 84 (8th Cir. 1894), for its contention that a statute of limitation must be treated substantively in certain circumstances. Dealing with a wrongful death action, the Eighth Circuit stated that "when a statute of a state or country gives a right of action unknown to the common law, and, in conferring the right, limits the time within which action may be brought, such limitation is operative in any jurisdiction where it is sought to enforce such cause of action." *Id.* at 85. The present action, however, is not such a case.

██ Unlike the wrongful death action in *Theroux*, suits for breach of contract existed at common law. Wisconsin did not create a cause of action for breach of warranty, it merely codified a common law action present in all states. Further, the statutes of limitation, including the accrual dates, in Indiana and Wisconsin are virtually identical except for their duration. Because Indiana treats statutes of limitation as procedural, this Court, sitting in diversity, is compelled to do so as well. This Court therefore declines Plaintiffs' invitation to alter current Indiana law and hold that statutes of limitation are substantive with regard to contract actions. Accordingly, while this Court may apply Wisconsin substantive law to Plaintiffs' fraud and contract claims, it shall apply Indiana's statute of limitations to all issues in this case.[6]

---

**6.** This Court's sentiments were shared by Judge Sharp in *Horvath v. Davidson* when he stated: "This case does not fall within that class of cases where the right is created by

statute and the limitation is part of the law creating the right. Rather, this is a case where the statute of limitations only affects the remedy, not the right. Here the right of

## B. *Wisconsin Law Governs Plaintiffs' Contract Claims*

Indiana subscribes to the Second Restatement of Conflicts concerning contracts. *Travelers Indem. Co. v. Summit Corp. of America,* 715 N.E.2d 926, 931 (Ind.Ct.App.1999) (citing the Second Restatement); *see also General Motors Corp. v. Northrop Corp.,* 685 N.E.2d 127, 134–135 (Ind.Ct.App.1997) ("Contractual disputes brought in Indiana courts are governed by the law of the forum with the most intimate contacts with the facts."). Section 188 of the Second Restatement states as follows:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §§ 6.

(2) In the absence of an effective choice of law by the parties (see §§ 187), the contacts to be taken into account in applying the principles of §§ 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

Restatement (Second) of Conflict of Laws §§ 188 (1971).

Regarding Plaintiffs' purchase of the boat in 1996, the only significant link between the Plaintiffs' purchase of the boat and Indiana is Plaintiffs' discussions with Nelson and Kitchin in August 1996. These discussions, while probably responsible for the Baileys' decision to travel to LaCrosse, did not result in a contract. Rather, the actual negotiating and signing of the contract between Skipperliner and the Baileys occurred in Wisconsin. In addition to the contract itself, the boat was delivered to the Baileys in Wisconsin and built by Skipperliner, a Wisconsin company. Regarding Caterpillar, while Caterpillar's offices are in Illinois, the engines were originally sold to a company in Green Bay, Wisconsin, and again sold to Skipperliner who placed the engines into the boat in Wisconsin. Further, the warranty covering the engines was accepted by the Baileys with their boat in Wisconsin, not Indiana. Regarding states' interests, Wisconsin has a greater interest in applying its commercial law to a resident corporation, Skipperliner, and those entities with whom it deals, Caterpillar, than Indiana has in applying its law to three nonresidents transacting business in Wisconsin.[7]

▮ Defendants raise several points in their efforts to link the parties' contracts to Indiana. Skipperliner cites *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012

---

the plaintiff was a common law right. Having elected to bring her action in Illinois, she must abide by the laws of procedure, the rules of pleading, the rules of evidence and the statute of limitations of Illinois." *Horvath,* 264 N.E.2d at 335.

7. Since the inception of this litigation, the Baileys have relocated to Pennsylvania.

(7th Cir.2002) which states that "recovery for a breach of warranty or consumer fraud... is decidedly where the consumer is located, rather than where the seller maintains its headquarters." *Id.* at 1017. The holding in *Bridgestone* is not as precise as Skipperliner believes. *Bridgestone* dealt with the sale of a car *in Indiana,* not another state. Unlike the manufacturer in *Bridgestone,* the negotiation for and sale of the boat occurred in Wisconsin. Both Defendants argue that Plaintiffs' talks with Skipperliner officials in Indiana, the occurrence of several engine repairs in Indiana, and Plaintiffs' mooring their boat in Indiana grant Indiana a more significant relationship with the contracts than Wisconsin. These arguments, while plausible, fail to rebut Restatement § 188(3) which states that "if the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." Restatement (Second) at § 188(3). Because Plaintiffs and Skipperliner signed the sales contract in Wisconsin and the boat was delivered in Wisconsin, it appears that Wisconsin has a more significant relationship with the contracts than Indiana. This Court therefore concludes that an Indiana court, applying Indiana conflict of laws, would hold that Wisconsin law applies to the contract issues in this case. Accordingly, in the spirit of *Erie,* this Court holds that Wisconsin law applies to the contract issues here.

### C. *Wisconsin Law Governs Plaintiffs' Fraud Claims*

As with contracts, Indiana subscribes to the Second Restatement of Conflicts concerning torts. *See Hubbard Mfg. Co., Inc. v. Greeson,* 515 N.E.2d 1071, 1073 (Ind. 1987) (citing the Second Restatement). Section 415 of the Second Restatement states as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in §§ 6.[8]

(2) Contacts to be taken into account in applying the principles of §§ 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws §§ 145 (1971).

■ Indiana courts initially favor the law of the state in which a tort occurred, turning to the above factors only when location is unimportant to the action. *See Cap Gemini America, Inc. v. Judd,* 597 N.E.2d 1272, 1282 (Ind.Ct.App.1992) ("if the place of the tort has extensive connection with the legal action, the traditional rule of *lex loci delicti...* applies; however, if the place of the tort bears little connec-

---

**8.** Section 6 of the Restatement directs courts to consider a variety of factors, including (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2).

tion to the legal action, a court may consider [the Second Restatement factors]").

■ This Court initially notes that the common law elements for actual fraud in Indiana and Wisconsin are virtually identical. *Compare Wright v. Pennamped,* 657 N.E.2d 1223, 1230 (Ind.Ct.App.1995) (listing the elements of fraud) to *Selzer v. Brunsell Bros., Ltd.,* 257 Wis.2d 809, 652 N.W.2d 806, 816 (2002) (same). Regardless of the laws' similarities, Wisconsin appears to have a more intimate connection with Plaintiffs' fraud claims. Plaintiffs allege that Skipperliner's representatives deceived them into thinking that their boat was constructed in 1996. Assuming, *arguendo,* that Plaintiffs' accusations are correct, Skipperliner's agents lied to the Baileys both in Indiana and in Wisconsin. While the alleged misrepresentations occurred only once or twice in Indiana, they occurred numerous times in Wisconsin— e.g. Plaintiffs' three trips to LaCrosse and numerous correspondence from Skipperliner officials in Wisconsin to Plaintiffs. Further pointing to Wisconsin, Skipperliner is both incorporated and operates out of Wisconsin, while Plaintiffs no longer reside in Indiana. Regarding the states' interest in applying their law, Wisconsin most likely has a greater interest in applying its law to a resident corporation than Indiana has in applying its law to two nonresidents. Lastly, while Plaintiffs first initiated contact with Skipperliner in Indiana, the parties' relationship is centered in Wisconsin. The Baileys purchased their boat in Wisconsin, signed all pertinent documents in Wisconsin, numerous repairs performed by Skipperliner were conducted in Wisconsin, and all correspondence from Skipperliner was initiated in Wisconsin. Relatively no action regarding the alleged fraud took place in Indiana except for conversations between the Baileys and Skipperliner officials in August 1996. Because Wisconsin has a more significant relationship to Plaintiffs' fraud claims, this Court holds that Wisconsin law applies to the fraud issues in this case.

**IV. CATERPILLAR'S MOTION FOR SUMMARY JUDGMENT**

As previously stated, Caterpillar moved for summary judgment on all aspects of Plaintiffs' complaint. Specifically, Caterpillar moved for summary judgment on the following: (1) Indiana's statute of limitation's applicability to Plaintiffs' claims regarding Caterpillar's 1996 warranty; (2) whether Plaintiffs' breach of warranty claims are barred by the terms of Caterpillar's warranty; (3) Plaintiffs' claims with regard to Caterpillar's alleged warranty of merchantability;[9] (4) Caterpillar's limited warranty to repair and replace Plaintiffs' engines; and (5) Plaintiffs' claims concerning defects in the design and manufacture of Caterpillar's engines.

A. *Plaintiffs' Claims Based on Caterpillar's 1996 Warranty are Barred Under Indiana's Statute of Limitation.*

■ As previously stated, Indiana law controls all statute of limitation claims in this case. Under Indiana law, "a breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." Ind.Code 26–1–2–725(2). Plaintiffs' took delivery of the boat on November 22, 1996. Hence, under Indiana's four year statute of limitation, the absolute latest date Plaintiffs could have filed their warranty actions

**9.** Plaintiffs concede this claim. (Pla. Resp. at 27)

under Caterpillar's 1996 warranty was November 22, 2000. Because Plaintiffs' claims were untimely filed, Caterpillar's motion for summary judgment as it pertains to Plaintiffs' claims arising from Caterpillar's 1996 warranty is **GRANTED.**

B. *Caterpillar's 1999 Warranty Applies Only to Plaintiffs' New Port Engine*

Since Caterpillar issued a new warranty to the Baileys upon replacing their port engine in 1999, all claims relating to Caterpillar's second warranty are not barred by Indiana's statute of limitation. Plaintiffs contend that the 1999 warranty applies to both Plaintiffs' new port engine and Plaintiffs' rebuilt starboard engine. *See e.g.* (Pla. Sur–Reply at 8–9) ("Bill Bailey understood the warranties to apply to both the [new] port and the [rebuilt] starboard engines.").

 Because Wisconsin law covers substantive contract issues in this case, this Court must look to Wisconsin's law of contract interpretation with regard to this issue. Under Wisconsin law, a contract's applicability is a matter of law for the court. *See Johnson Controls, Inc. v. Employers Ins. of Wausau,* 665 N.W.2d 257, 270 (Wis.2003) ("The interpretation of words or clauses in an insurance contract is a question of law . . ."); *Ledman v. State Farm Mut. Auto. Ins. Co.,* 230 Wis.2d 56, 601 N.W.2d 312, 314 (1999) ("The interpretation of an insurance contract and the conclusion as to whether coverage exists under a given contract are questions of law . . .").[10] Wisconsin, like the majority of states, looks to the four corners of a con-

tract when interpreting its provisions until the court finds an ambiguity. *Peace ex rel. Lerner v. Northwestern Nat. Ins. Co.,* 228 Wis.2d 106, 596 N.W.2d 429, 444 (1999). Ambiguity exists in a contract if the contract is reasonably susceptible to more than one meaning. *Wausau Underwriters Ins. Co. v. Dane County,* 142 Wis.2d 315, 417 N.W.2d 914, 916 (1987). The relevant portion of Caterpillar's 1999 warranty provides as follows:

Warranty Period

. . . .

For *new* 3054, 3056, 3116, 3126 and 3208 marine propulsion engines, and marine transmissions sold by Caterpillar for use with such engines, used in non-revenue producing pleasure craft applications, the standard warranty period is 24 months or 1000 hours, whichever occurs first, after date of delivery to the first user.

(Caterpillar Limited Warranty for 1999 engine) (emphasis added)

The warranty's language is unambiguous, clearly stating that the warranty applies to "new" engines. When a contractual term is unambiguous, Wisconsin courts must apply the term's literal meaning. *Farm Credit Serv. v. Wysocki,* 243 Wis.2d 305, 627 N.W.2d 444, 448 (2001). When a term is not explicitly defined within the four corners of a contract, "dictionary definitions are dispositive of the ordinary meanings ascribed to contract terms." *Gorton v. Hostak, Henzl & Bichler,* 217 Wis.2d 493, 577 N.W.2d 617, 623 (1998). "New" is defined as something "not existing before; now made, or brought into

---

**10.** Indiana also allows courts to interpret the application of contracts. *See Martin Rispens & Son v. Hall Farms, Inc.* 621 N.E.2d 1078, 1082 (Ind.1993) (determining the existence of an express warranty under Indiana's commercial code as a matter of law) ("Where an

agreement is entirely in writing, the question of whether express warranties were made is one for the court."). Neither Plaintiffs nor Caterpillar briefed this Court regarding the applicable Wisconsin law on this issue.

existence, for the first time." *Oxford English Dictionary* 2d ed. (1989).

■ The rebuilt starboard engine was not "new" under the term's unambiguous definition. It had existed since 1996, probably longer, and was the result of substantial repairs, not a complete replacement. The port engine, conversely, was new—i.e. it had been completely replaced. The mere fact that Mr. Bailey believed that the 1999 warranty applied to both engines is irrelevant. The 1999 warranty states on its face that it only applies to new engines. This Court therefore concludes that a Wisconsin court would hold that Caterpillar's 1999 warranty only pertains to the Baileys' new port engine installed in 1999, and, pursuant to its diversity jurisdiction, does the same.

### C. *Factual Questions Remain With Regard to the Terms of Caterpillar's 1999 Warranty*

Caterpillar contends that Plaintiffs' warranty claims, particularly Plaintiffs' claims for monetary and consequential damages, are barred by the provisions within the 1999 warranty. Again, because all claims brought under the 1996 warranty are time barred, this Court need only address the 1999 warranty.

#### 1. *Applicable Law*

Because a warranty's limitation on damages is a substantive issue, an Indiana court would apply Wisconsin law in this case. Fortunately, Indiana and Wisconsin law are identical concerning commercial warranties' ability to limit monetary damages. *Compare* Ind.Code 26–1–2–719 *to* Wis. Stat. § 402.719. Caterpillar's argument made under Indiana law is thus applicable under both states' statutes. Under Wisconsin law, a sales agreement may limit or alter the measure of damages recoverable under the Wisconsin Commercial Code, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts. Wis. Stat. § 402.719(1)(a). An agreement may also limit or exclude consequential damages unless the limitation or exclusion is unconscionable. Wis. Stat. § 402.719(3). Limitation of consequential damages for commercial loss is not *prima facie* unconscionable. *Id.*

■ A written warranty's disclaimer of monetary damages is not absolute. Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, other remedies may be had as provided in the UCC. Wis. Stat. § 402.719(2).[11] Where a seller fails or refuses to effect repairs as required by the terms of a warranty, the warranty can be found to have failed of its essential purpose. *Midwhey Powder Co., Inc. v. Clayton Industries*, 460 N.W.2d 426, 430 (Wis.Ct.App. 1990); *see also* 4B Anderson on the Uniform Commercial Code §§ 2–719:49 (2003) ("Whether a limited remedy has failed of its essential purpose is a question of fact which cannot be determined on motion for summary judgment where there was a dispute as to whether the seller had refused to honor its limited remedy obligation to repair or replace").

#### 2. *Analysis*

Caterpillar's 1999 limited warranty provides that "remedies under this warranty are limited to the provision of material and services, as specified herein. Caterpillar is not responsible for incidental or consequential damages." (Caterpillar Mot. at 7–8) (citing Caterpillar Limited Warranty for 1999 engine). Plaintiffs state that

---

**11.** Wisconsin law on this issue is identical to Ind.Code 26–1–2–719(2).

"Caterpillar made numerous attempts to repair the problem, to no avail," (Pla. Resp. at 25), and argue that Caterpillar's failure to correct their boat's engine problems caused the warranty to fail of its essential purpose. *See* (Harold Bailey Dep. at 152–201) (discussing problems with the boat's engines before *and after* the 1999 replacement as well as Plaintiffs' expenditures in seeking repairs).

Caterpillar contends that the warranty did not fail of its essential purpose because the post–1999 engine was not defective. (Caterpillar Reply at 10); *see also H.B. Fuller Co. v. Kinetic Systems, Inc.,* 932 F.2d 681, 688 (7th Cir.1991) (applying Wis. Stat. § 402.719) (holding that a plaintiff could not sustain a claim for breach of limited warranty to repair or replace where the product was not defective.)[12] Citing *Massey v. U.S.,* 312 F.3d 272 ( 7th Cir.2002) and *Whetstine v. Gates Rubber Co.,* 895 F.2d 388 (7th Cir.1990), Caterpillar argues that "Plaintiffs' claim that they have provided 'substantial evidence' of engine problems is entirely unsupported by any appropriate testimony." (Caterpillar Repl at 13).

■ The "appropriate testimony" to which Caterpillar refers is expert testimony. Caterpillar argues that the afore-cited cases hold that Plaintiffs' failure to set forth expert testimony concerning a defective product warrants summary judgment and attempts to discredit Plaintiffs' testimonial support under Fed.R.Evid. 702. This Court need not go into an elaborate discussion regarding the qualifications of Plaintiffs' witnesses as Plaintiffs have sufficiently distinguished Caterpillar's authority.

Caterpillar initially cites *Massey v. U.S.* for its contention that "[i]t is incumbent upon the plaintiff to substantiate his allegations through expert testimony to defeat a motion for summary judgment." (Caterpillar Reply at 13). *Massey* dealt with a federal prison inmate's medical malpractice action brought under the Federal Tort Claims Act and is unrelated to the Bailey's UCC claim. The FTCA, applying Illinois law, required the presentation of expert testimony in rebuttal to the government's motion for summary judgment. No such requirement is evident under Wisconsin or Indiana's Commercial Code.

Caterpillar next cites *Whetstine v. Gates Rubber Co.* for its contention that "[a] plaintiff's failure to bring forth such expert testimony is fatal to his claim because his allegations, standing alone, cannot create a genuine issue of material fact for trial." (Caterpillar Reply at 13). *Whetstine* dealt with a joint products liability and negligence action under Illinois law in which the Seventh Circuit affirmed a court's entry of summary judgment where the nonmoving party presented no evidence to rebut the moving party's expert testimony. *Whetstine,* 895 F.2d at 395. The court did not hold that summary judgment was proper because the nonmoving party failed to set forth expert testimony, it simply applied the standard set forth in Fed. R.Civ.P. 56 and granted summary judgment because insufficient evidence was set

---

12. The Court in *Fuller* relied on *Murray v. Holiday Rambler,* 83 Wis.2d 406, 265 N.W.2d 513 (1978). *Fuller,* 932 F.2d at 688 ("In *Murray,* a couple purchased a motor home, signing a sales agreement that limited their remedy to the repair or replacement of defective components. The motor home was sold with numerous defects, all of which the dealer attempted to repair. The Wisconsin Supreme Court affirmed a jury verdict for the buyers on the ground that, notwithstanding the dealer's efforts, a warranty limitation could 'fail [ ] of its essential purpose whenever, despite reasonable opportunity for repair, the goods are not restored to a nondefective condition within a reasonable time, whether or not the failure to do so is willful.' ").

forth to contradict a motion for summary judgment.

Unlike the nonmoving party in *Whetstine*, Plaintiffs have provided sufficient evidence on which a jury could find that Caterpillar's limited warranty failed of its essential purpose. Whether Caterpillar's expert testimony is more credible than Plaintiffs' lay witnesses is not for this Court to decide. Caterpillar's motion for summary judgment as it pertains to Plaintiff's ability to seek monetary and consequential damages is therefore **DENIED.**

D. *Factual Questions Remain With Regard to Caterpillar's Agreement to Repair Plaintiffs' Engines*

Caterpillar's limited warranty, both in its 1996 and 1999 versions, limited Caterpillar's liability to repair and replacement of the warranted engines. (Caterpillar Limited Warranty for 1999 engine). Because Plaintiffs' claims based on the 1996 warranty are time barred, this Court need only address the Baileys' claims as they pertain to the post–1999 port engine. Caterpillar contends that its agents and authorized dealers performed engine repairs and service on numerous occasions and argues that Plaintiffs' inability to prove that Caterpillar ever refused to repair or service their engines warrants summary judgment.

 As reasoned above, fact questions remain as to whether Caterpillar successfully repaired the port and starboard engines after issuance of the 1999 warranty. Caterpillar's motion for summary judgment with regard to its agreement to repair the engines is therefore **DENIED.**[13]

E. *Factual Questions Remain With Regard to the Existence of an Engine Design or Manufacturing Defect*

1. *Caterpillar's Contentions*

Caterpillar's warranty provides for repair or replacement only for "defect in material or workmanship." (Caterpillar Limited Warranty for 1999 engine). Caterpillar argues that "[a]ccording to Caterpillar's qualified expert, no defect in design or manufacture exists in the plaintiffs' engines," and that Plaintiffs' have set forth no contrary evidence by qualified experts or otherwise to rebut their claim. (Caterpillar Memo. at 13–14).

As reasoned above, expert opinion is unnecessary to rebut an assertion made in the summary judgment context. Caterpillar's argument that Plaintiffs have failed to produce qualified expert testimony is unpersuasive. As previously stated, whether Caterpillar's expert is more believable than Plaintiffs' lay witness is a jury, not a judicial, question.

2. *Motions to Strike*

Plaintiffs produced the affidavit of John Vanek, a certified Caterpillar mechanic, in their response to Caterpillar's argument, and cite to paragraphs 14–16, 18, 21, and 24–26 of the affidavit in support of their argument. Defendant Skipperliner filed two motions concerning Vanek's affidavits. Skipperliner's first motion to strike, filed on May 13, 2003, addresses the affidavit at issue. Skipperliner's second motion, filed on June 2, 2003, deals with Vanek's supplemental affidavit submitted in support of Caterpillar's filings. Because this Court

---

**13.** In their supplemental brief, Plaintiffs contend that Caterpillar failed to challenge Plaintiffs' claim concerning breach of agreement to repair. (Pla. Supp. Brief at 5). While incorrect, *see* (Caterpillar memo at 11–12) (addressing Caterpillar's limited warranty to repair and replace Plaintiffs' engines), Plaintiffs' contention is inconsequential since Caterpillar's motion for summary judgment is denied on this issue.

has not considered Vanek's supplemental affidavit in consideration of this decision, Skipperliner's second motion as it pertains to Vanek's supplemental affidavit is **DENIED AS MOOT.**

▮ Concerning the affidavit at issue, Skipperliner first argues that Vanek's affidavit contains expert testimony not previously disclosed to Defendants under this Court's August 8, 2002, scheduling order and Fed.R.Civ.P. 26(a)(2). Rule 26, citing Fed.R.Evid. 702, 703, and 705, defines an expert witness as "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed.R.Civ.P. 26(a)(2)(B). After summarizing Vanek's affidavit, Skipperliner states that "[c]learly, Vanek's opinions are of the Federal Rule of Evidence 702 variety, *i.e.,* opinions requiring scientific, technical, or specialized knowledge." (Skipperliner Memo. at 2). Skipperliner's statement is unpersuasive, especially in light of the limited substance of Vanek's statements.

Vanek is a certified Caterpillar mechanic operating out of St. Louis, Missouri. Plaintiffs contend that he is not an expert, but merely an experienced mechanic offering observational testimony, not expert opinion. Plaintiffs are correct in their assertion. For instance, Skipperliner argues that Vanek's statement that "[m]ost pleasure boats, like the Baileys', have the exhaust running from the sides of the boat and the exhaust is half in the water," (Vanek aff. at ¶ 11) constitutes expert testimony. This statement, as with others in the affidavit, consist mainly of Vanek's observances and basic knowledge of Caterpillar products, not expert opinion.

Skipperliner also attempts to strike paragraphs 10–14, 17–19, and 23–24 of Vanek's affidavit for lack of foundation. This Court need only consider the paragraphs relied on by Plaintiffs in rebutting Caterpillar's motion with regard to engine defects. Skipperliner's motion as it pertains to all other paragraphs is therefore **DENIED AS MOOT.**

Paragraphs 14, 18, and 24 of Vanek's affidavit are cited by Plaintiffs and subject to Skipperliner's motion. Each paragraph sets forth information without adequate foundation and should be stricken. *See* (Vanek Aff. at ¶ 14) (giving no basis as to how Vanek knew that the oil extracted from Plaintiffs' engines was 10/40); *Id.* at ¶ 18 (providing no information as to how Vanek knew of other CAT engines' performance); *Id.* at ¶ 24 (providing no basis for Vanek's hypothesis). Because they lack adequate foundation, Skipperliner's motion to strike as it pertains to paragraphs 14, 18, and 24 of Vanek's affidavit is **GRANTED.**

### 3. *Analysis*

Despite the removal of three paragraphs from Vanek's affidavit, Plaintiffs have still produced enough evidence on which a rational trier of fact could determine that the post–1999 port engine was defective. *See* (Vanek Aff. at ¶ 15–16, 21) (indicating problems with the engines and their oil systems). While Caterpillar's contention that the "knowledgeable testimony" (Caterpillar Memo. at 16) of their expert is more persuasive that Plaintiffs' evidence may be true, the weighing of evidence on this matter is a question of fact, not law, and must be left to the jury. Caterpillar's motion for summary judgment as it pertains to the existence of design or manufacturing defects in the post–1999 port engine is therefore **DENIED.**

### V. SKIPPERLINER'S MOTION FOR SUMMARY JUDGMENT

As previously stated, Skipperliner's motion requests summary judgment on four

counts. Specifically, Skipperliner moves for summary judgment on the following: (1) Plaintiffs' fraud claim, (2) Plaintiffs' breach of contract claims,[14] (3) Plaintiffs' claim for breach of express warranty, and (4) Plaintiffs' claim for punitive damages.

### A. Factual Questions Remain With Regard to Plaintiffs' Fraud Claims

Plaintiffs allege that "Skipperliner representatives expressly represented to the Baileys that the boat was a 1996 model and was brand new," (Amend. Comp. at ¶ 6), and that "the representations of Skipperliner that the boat was a 1996 were false." *Id.* at ¶ 11. The Baileys further contend that they relied upon Skipperliner's representations to their detriment. *Id.* at ¶ 17.

### 1. Applicable Law

A finding of fraud under Wisconsin law requires (1) a purposeful representation of fact made by the defendant (2) which is untrue; and (3) is believed by the plaintiff and relied on to his detriment. *Selzer v. Brunsell Bros., Ltd.*, 257 Wis.2d 809, 652 N.W.2d 806, 816 (2002); *Putnam v. Time Warner Cable of Southeastern Wisconsin, Ltd. Partnership*, 255 Wis.2d 447, 649 N.W.2d 626, 635 (2002).[15] A representation is material, and thus actionable, "if a reasonable person would attach importance to the existence of the matter or if the maker knows or has reason to know that the recipient regards it as important." *Radford v. J.J.B. Enterprises, Ltd.*, 163 Wis.2d 534, 472 N.W.2d 790, 794

(1991) (citing Restatement (Second) of Torts § 538 (1977)).

### 2. Plaintiffs' Motion to Strike

In its motion for summary judgment on Plaintiff's fraud claim, Skipperliner relies on portions of Gregory T. Davis's expert report regarding the boating industry's practice of introducing new boat models in the late summer or early fall of the year preceding the model's date. Because Davis's report is subject to Plaintiffs' motion to strike, it is necessary to address the report's admissibility. Plaintiffs' motion to strike the expert disclosure of Bill Naugle is based on the same arguments as their motion concerning Davis's report. This Court's discussion of the admissibility of Davis's report thus applies equally to Naugle's disclosure.[16]

Davis and Naugle's disclosures were submitted as Exhibits H and I of Caterpillar's motion for summary judgment. Neither disclosure was drafted while Naugle or Davis were sworn under oath. Accordingly, Plaintiffs argue that the documents were not "sworn or in a form that would make [them] admissible in evidence" and should be struck as hearsay. (Pla. Mot. at 6). Defendants Caterpillar and Skipperliner submitted signed affidavits from Davis and Naugle on May 12 and 13, 2003, respectively. The affidavits are attached to each persons' disclosure and state that the copy of the disclosure submitted to this Court "is a true and correct copy" of the

---

**14.** Plaintiffs allege two breach of contract claims against Skipperliner: one regarding a breach of contract relating to the purchase of the boat, and another relating to Skipperliner's agreement to repair the boat. Plaintiffs concede their claim with regard to Skipperliner's alleged breach of contract to repair the boat. (Pla. Resp. at 35).

**15.** Skipperliner based its arguments on Indiana law regarding Plaintiffs' fraud claims. Because Indiana and Wisconsin law is virtually identical regarding fraud, further briefing is unnecessary.

**16.** Both Davis's report and Naugle's disclosure will be collectively referred to as "disclosures."

disclosure submitted to Defendants. (Davis Aff. at ¶ 3; Naugle Aff. at ¶ 3).

■ The May affidavits are subject to two interpretations. Plaintiffs contend that the affidavits do not cure the reports' deficiencies, and that the reports remain hearsay regardless of the sworn statements. Defendants, by contrast, argue that the affidavits incorporate the earlier disclosures by reference, making them admissible. *See* (Naugle Aff. at ¶ 3) (specifically incorporating his disclosure into his affidavit by reference). Supporting materials accompanying a motion for summary judgment "must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits." *Roberts v. Samardvich,* 909 F.Supp. 594, 600 (N.D.Ind.1995). Accordingly, supporting materials "must be of evidentiary quality—either admissible documents or attested testimony, such as that found in depositions or in affidavits" *Id.* (citing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267 (7th Cir.1994)). Inadmissible hearsay may not be considered in a court's ruling on a motion for summary judgment. *Id.*

This Court need not address this issue, however, since other evidence, not subject to a motion to strike, establishes a factual dispute regarding the alleged fraud. Plaintiffs' motion to strike as it pertains to the expert disclosures of Davis and Naugle from Defendants' motions for summary judgment is therefore **DENIED AS MOOT.**

### 3. *Analysis*

#### a) *Skipperliner's Representations to Plaintiffs*

■ Skipperliner contends that its representatives made no false statements, arguing that the boat, while manufactured prior to 1996, was a 1996 model. *See* (Skipperliner Memo. at 10) ("The Baileys themselves admit that no representations were made to them about the year of construction."). Skipperliner further contends that the boat's hull identification number, located on the boat itself as well as on numerous correspondence between Plaintiffs, Skipperliner, and several financing agencies, indicated that the boat was a 1996 model. *See* 33 C.F.R. § 18.23 (indicating how to decipher hull identification numbers). Without any misrepresentation of fact, there can be no fraud. *Kimberly Area School Dist. v. Zdanovec,* 222 Wis.2d 27, 586 N.W.2d 41, 52 (1998). Thus, so long as Skipperliner proffered no false statements to the Baileys, Plaintiffs cannot sustain their claim for fraud.

■ Under 33 C.F.R. 181.3, a "model year means the period beginning August 1 of any year and ending on July 31 of the following year. Each model year is designated by the year in which it ends." Plaintiffs contend that the boat was constructed in 1994, making the boat a 1995 rather than a 1996 model. Plaintiffs produce several evidentiary items indicating that the boat may have been manufactured in 1994. *See* (Sawicki Purchase Agreement) (dated October 18, 1994); (Videotape advertising the boat purchased by Plaintiffs as a 1995 Motoryacht); (October 20, 1995, ltr. from Skipperliner Vice President of Operations to Sawicki at ¶ 11) (indicating that Sawicki took delivery of the boat in 1995). In light of the evidence submitted by Plaintiffs, this Court holds that a reasonable juror could find that Skipperliner misrepresented the fact that the boat was a 1996 model.

#### b) *Whether the Boat was "New"*

■ Skipperliner also argues that it is entitled to summary judgment on the grounds that the boat was in fact "new"

upon delivery to Plaintiffs. In essence, Skipperliner argues that the boat was new—i.e. not a "used" boat—because Sawicki never accepted delivery. While many aspects of this claim are intertwined with Plaintiffs' fraud claim concerning the year of the boat, conflicting evidence exists pertaining to whether or not Sawicki actually accepted delivery. *Compare* (Sawicki Dep. at 32) *to* (October 20, 1995 ltr. from Skipperliner Vice President of Operations to Sawicki at ¶ 11). While this contrast may not fully persuade all triers of fact to rule in Plaintiffs' favor, this Court cannot rule, as a matter of law, that no rational trier of fact could rule for Plaintiffs on this issue.

### c) *Plaintiffs' Reliance on Skipperliner's Contentions*

 Skipperliner further argues that Plaintiffs did not detrimentally rely on any alleged representation regarding the year of the boat. *See* (Harold Bailey Dep. at 254–55; Carole Bailey Dep. at 143) (indicating that the Baileys had no problems servicing or insuring the boat that were attributable to the fact that the boat was built at a time earlier than represented). Plaintiffs rebut Skipperliner's contention, however, indicating that the Baileys would not have purchased the boat, or would have negotiated a lower purchase price for the boat, had they known the boat was older than represented. *See* (Harold Bailey Aff. at ¶ 35). This evidence indicates that the Baileys relied on Skipperliner's representations in their decision to purchase the boat and could allow a reasonable juror to rule in their favor.

### d) *Causation and Damages*

 Lastly, Skipperliner argues that Plaintiffs cannot prove that the alleged problems with the boat are the proximate result of any fraud. (Skipperliner Reply at 11) (citing *Lustine Chevrolet v. Cadeaux,*

308 A.2d 747, 751 (Md.Ct.App.1973); *Captain & Co., Inc. v. Stenberg,* 505 N.E.2d 88, 98 (Ind.Ct.App.1987)). Skipperliner cites no Wisconsin law in support of its argument, and this Court notes that, in tort actions, proximate cause is typically the province of the jury. *Alvarado v. Sersch,* 257 Wis.2d 752, 652 N.W.2d 109, 117 (2002); *see also Baker v. Northwestern Nat. Cas. Co.,* 26 Wis.2d 306, 132 N.W.2d 493, 500 (1965) ("one may recover those damages in a fraud action which are the natural and proximate result of the fraud").

Plaintiffs' only damage from the alleged fraud is that they would have either refused to purchase the boat or would have paid a lower price for it, had they known the proper year of manufacture. Plaintiffs will undoubtedly have difficulty assigning a value to this loss at trial, and Plaintiffs were prudent in not alleging that the engine and other difficulties stemmed from any fraud. However, in light of the fact that a reasonable juror could find some damage stemming from fraud, if quantifiable, summary judgment is inappropriate at this stage. Because this Court cannot hold that the factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, Skipperliner's motion for summary judgment as it pertains to Plaintiffs' fraud claims is **DENIED.**

### B. *Plaintiffs' Contract and Warranty Claims Against Skipperliner are Barred Under Indiana's Statute of Limitation*

#### 1. *Skipperliner Did Not Waive a Statute of Limitation Defense*

 In its reply, Skipperliner contends that Plaintiffs' contract and warranty claims are barred under Indiana's statute of limitations. Skipperliner failed to address this issue in its initial motion. This

Court, however, may address Skipperliner's limitations claim *sua sponte*. *See Acequia, Inc. v. Prudential Ins. Co. of America*, 226 F.3d 798, 807 (7th Cir.2000) ("A district court is permitted to enter summary judgment *sua sponte* if the losing party has proper notice that the court is considering granting summary judgment and the losing party has a fair opportunity to present evidence in opposition."). Plaintiffs were given ample opportunity to defend against Defendants' limitations claims. Caterpillar raised its statute of limitations defense in its motion for summary judgment, and Plaintiffs responded to Caterpillar's limitations claims in both their response and sur-reply briefs. Plaintiffs were given a further opportunity to respond to Skipperliner's argument in their Supplemental Brief filed on August 15, 2003. Because Caterpillar's claims address identical issues to Skipperliner's contentions, this Court holds that Plaintiffs had notice and were able to respond to Skipperliner's limitations argument.[17]

### 2. *Plaintiffs' Contract Claims*

■ As previously stated, Plaintiffs concede their claims regarding Skipperliner's contract to repair. Hence, the only claim remaining is Plaintiffs' claim that Skipperliner breached its contract relating to purchase of the boat. *See* (Pla. Complaint at ¶ 20) ("Skipperliner materially breached the contract with the Baileys relating to the purchase of the boat."). As reasoned above, Indiana law applies to all limitations claims in this case. Under Indiana's enactment of the Uniform Commercial Code, "an action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued." Ind.Code 26–1–2–725(1).[18] "A cause of action [for breach of contract] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Ind.Code 26–1–2–725(2); *see also Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 928 (Ind.Ct. App.2003) ("a cause of action for breach of contract accrues at the time the breach occurs...rather than the time that actual damages are sustained as a consequence of the breach.").

■ Construing all facts in the light most favorable to the Baileys, the contract for sale of the boat was signed in October 1996, with Plaintiffs taking possession of the boat in November 1996. Had Skipperliner misrepresented the model year of the boat, the contract would have been breached at that time because the boat, deemed a 1996 model on the sales contract, was not in fact a 1996 model boat. Plaintiffs thus needed to file suit by November 2000.

---

17. This Court notes that Skipperliner adequately pled statutes of limitation as an affirmative defense under Fed.R.Civ.P. 8(c) in its Answer to Amended Complaint, Counter Claim and Cross Claim filed on April 15, 2003. (Skipperliner Amend. Ans. at 6).

18. Neither the Baileys nor Skipperliner specifically address whether Indiana's UCC applies to Plaintiffs' boat. A cursory review of the UCC, however, reveals that the UCC applies. Under Indiana's UCC, " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale, other than the money in which the price is to be paid, investment securities ( [Ind.Code] 26–1–8.1), and things in action." Ind.Code 26–1–2–105(1); *see also* Sonja A. Soehnel, J.D., *What Constitutes "Goods" Within the Scope of UCC Article 2*, 4 A.L.R.4th 912 § 15 (1981) ("In a number of cases the courts have held that various kinds of ships constituted goods within the scope of Article 2 of the UCC.").

At this Court's August 11, 2003, hearing, Plaintiffs' counsel argued that the statute of limitation taken from Indiana's UCC did not apply to the present case. Counsel redacted that argument in its supplemental filings with this Court. (Pla. Supp. Brief. at 2 n. 2).

Instead, Plaintiffs filed suit on May 16, 2001, six months too late.

Even if Skipperliner's alleged breach stemmed from the boat's malfunctioning, Plaintiffs contend "that the boat was not operational from the time they took delivery" and that "the sooting problem existed from day one." (Pla. Amend. Resp. at 36). Hence, even if Plaintiffs' claim stems from Skipperliner's delivery of a faulty product, the breach would have occurred immediately upon Plaintiffs' receipt of the boat in 1996, precluding their contract claims as filed in 2001. Because Plaintiffs' claim for breach of contract relating to the purchase of the boat is precluded by Indiana's statute of limitations, Skipperliner's motion for summary judgment as it pertains to this issue is **GRANTED.**

### 3. *Plaintiffs' Warranty Claims*

Plaintiffs' complaint raises three warranty claims against Skipperliner: breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. As with Plaintiffs' contract claims, Plaintiffs' warranty claims are barred by Indiana's statute of limitations.

Under Indiana law, "a breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." Ind. Code 26–1–2–725(2). Because delivery of the boat occurred on November 22, 1996, the absolute latest date Plaintiffs could have filed their warranty actions against Skipperliner was November 22, 2000. Because Plaintiffs' claims were untimely filed, Skipperliner's motion for summary judgment as it pertains to Plaintiffs' warranty claims is **GRANTED.**

### C. *Plaintiffs are Unable to Sustain a Claim for Punitive Damages*

Plaintiffs' amended complaint includes a request for punitive damages against both Skipperliner and Caterpillar. Citing both Indiana and Wisconsin law, Skipperliner argues that punitive damages are not warranted because Plaintiffs have failed to provide clear and convincing evidence to justify a punitive award. Skipperliner's argument is sound.

■ "Wisconsin courts have consistently held that punitive damages are unavailable in a breach of contract action." *Loehrke v. Wanta Builders, Inc.,* 151 Wis.2d 695, 445 N.W.2d 717, 720 (1989) (citing *Autumn Grove Joint Venture v. Rachlin,* 138 Wis.2d 273, 405 N.W.2d 759, 762 (1987)); *see also* Restatement (Second) of Contracts § 355 (1979) ("Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable."). Accordingly, Plaintiff's claims for punitive damages against Caterpillar are unwarranted because Plaintiff failed to allege any tort claims with regard to Caterpillar's conduct. Plaintiffs' claims against Skipperliner, however, include fraud issues intermixed with breach of contract claims. This Court must therefore examine whether Plaintiffs have set forth sufficient evidence to warrant their punitive damage claim against Skipperliner.

■ Under Wisconsin law, a "plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Wis. Stat. § 895.85(3). Whether a plaintiff may seek punitive damages is a matter of law. *Sharp ex rel.*

*Gordon v. Case Corp.*, 595 N.W.2d 380, 389 (Wis.1999).

The District Court for the Eastern District of Wisconsin, interpreting Wisconsin law, exhaustively examined Wis. Stat. § 895.85 in *Boomsma v. Star Transp., Inc.*, 202 F.Supp.2d 869 (E.D.Wis.2002). The court's examination is as follows:

> As a consequence of the enactment...of Wis. Stat. § 895.85, Wisconsin is now among the states having the most stringent punitive damage conduct requirements.... The intent of the legislature to heighten the standard for recovery of punitive damages could not be clearer.....[T]he legislature's intent in passing the law had been to make it more difficult for a plaintiff to recover punitive damages by adopting a standard more narrow than the case law standard which allowed punitive damages for conduct which showed a reckless indifference to or disregard of the rights of others on the part of the wrongdoer. It is clear from the text of the statute that Section 895.85 marks a significant departure from the common law standard.
>
> . . . .
>
> In Wisconsin, the malicious or intentional conduct necessary to recover punitive damages must be proved by clear and convincing evidence. Wisconsin Jury Instruction 1707.1 provides some guidance concerning how to apply the stringent standard adopted in Section 895.85. [The instructions provide:]
>
> A person's acts are malicious when they are the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended. A person acts in intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are practically certain to result in the plaintiff's rights being disregarded.
>
> . . . .
>
> As the jury instruction makes clear, this state of mind has three characteristics that distinguish it from recklessness: (1) a subjective awareness on the part of the defendant (2) that his conduct is practically certain to result in (3) the plaintiff's rights being disregarded. A jury may not consider whether the defendant "ought to have been aware" of the potential for a certain outcome.

*Boomsma v. Star Transp., Inc.*, 202 F.Supp.2d 869, 880–81 (E.D.Wis.2002) (emphasis, quotations, and internal citations omitted).

Plaintiffs fail to cite any evidence, admissible or otherwise, in their response to Skipperliner's punitive damage argument and merely state that the evidence in this case "clearly supports" their claim for punitive damages. (Pla. Resp. at 37–38) The evidence presented is not clear, much less clear and convincing, as Plaintiffs contend.

After searching the documents accompanying Plaintiffs' motion, this Court can only find several pieces of evidence which could insinuate Skipperliner's malicious conduct. *See* (Kitchin Dep. at 26–27; 79–80; Kitchin Aff. at ¶ 4)(noting a disagreement between Kitchin and Dan Nelson that the boat shown to the Baileys at the 1996 boat show was a 1996 model); (July 3, 1996, Skipperliner Interoffice Memo from Noel Jordan to Todd Jordan) (stating that the boat "should be cleaned and put in like-new condition"); (August 19, 1996 Field Service Report) (listing repairs performed on the boat).

▮ None of these documents present clear and convincing evidence of Skipperliner's subjective awareness that its conduct was practically certain to result in the Bailey's rights being disregarded. If any-

thing, the evidence submitted could permit a jury to infer that Skipperliner's agents meant to present the boat as a 1996 model, but no evidence has been presented that can insinuate that Skipperliner's conduct comes close to the high degree of culpability required for punitive damages under Wisconsin law. Because Plaintiffs cannot establish by clear and convincing evidence that Skipperliner acted maliciously in its alleged acts of fraud, Skipperliner's motion for summary judgment with regard to this issue is **GRANTED.**

## VI. CONCLUSION

This case is severely truncated as a result of this Court's decision. In summary, this Court holds that, under *Erie* and *Klaxon*, this Court is bound by Wisconsin substantive law on Plaintiffs' fraud, contract, and warranty claims. This Court determines, however, that an Indiana court faced with this matter would apply its own statute of limitations to Plaintiffs' claims. Accordingly, all contract and warranty claims against Skipperliner are subject to summary judgment as are all warranty claims against Caterpillar based on Caterpillar's 1996 limited warranty. In addition, this Court holds that an Indiana court, applying Wisconsin law, would not allow Plaintiffs' punitive damage claims to proceed. Hence, the only claims remaining in this matter are Plaintiffs' fraud claims against Skipperliner and Plaintiffs' claims against Caterpillar based on the 1999 replaced port engine alone.

Concerning all pending motions, this Court specifically rules as follows:

- Plaintiffs' motion to strike portions of the affidavit of Bill Naugle and the expert reports of Bill Naugle and Gregory Davis [Doc. No. 55] is **DENIED AS MOOT.**

- Defendant Skipperliner's motion for partial summary judgment [Doc. No. 66] is **GRANTED IN PART** and **DENIED IN PART.**

- Skipperliner's motion as it pertains to Plaintiffs' fraud claim is **DENIED.**

- Skipperliner's motion as it pertains to Plaintiffs' breach of contract claims against Skipperliner is **GRANTED.**

- Skipperliner's motion as it pertains to Plaintiffs' breach of warranty claims against Skipperliner is **GRANTED.**

- Skipperliner's motion as it pertains to Plaintiffs' request for punitive damages is **GRANTED.**

- Defendant Skipperliner's motion to strike the Affidavit of John Vanek [Doc. No. 72] is **GRANTED IN PART,** and **DENIED AS MOOT IN PART.**

- Skipperliner's motion as it pertains to Paragraphs 14, 18, and 24 or the affidavit is **GRANTED.**

- Skipperliner's motion as it pertains to all other portions of the affidavit is **DENIED AS MOOT.**

- Defendant Caterpillar's motion for summary judgment [Doc. No. 77] is **GRANTED IN PART** and **DENIED IN PART.**

- Caterpillar's motion for summary judgment with regard to Plaintiffs' claims concerning warranty issues arising out of Caterpillar's 1996 warranty is **GRANTED.**

 - This Court accordingly holds that Plaintiffs' claims arising from Caterpillar's 1999 warranty pertain to Plaintiffs' new port engine alone.

- Caterpillar's motion for summary judgment as it pertains to Caterpillar's argument that the terms of its limited warranty prevents Plaintiffs from receiving monetary and consequential damages is **DENIED.**

- Caterpillar's motion for summary judgment as it pertains to Caterpillar's

alleged breach of an implied warranty of merchantability is **GRANTED.**

● Caterpillar's motion for summary judgment as it pertains to Caterpillar's agreement to repair is **DENIED.**

● Caterpillar's motion for summary judgment as it pertains to the existence of a design or manufacturing defect is **DENIED.**

● Defendant Skipperliner's motion to strike the affidavit of John Vanek and Supplemental Affidavit of Bill E. Naugle tendered by Defendant Caterpillar [Doc. No. 88] is **DENIED AS MOOT.**

**SO ORDERED.**